IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-1817

 (1) Steven B Silverstein,

  Plaintiff,

v.

 (1) Jeffrey A. Wolf, (2) Jean Wolf, (3) KIVA LLC, (4) Wheatley Irrevocable Trust, (5) Meshakai Wolf, (6) Rapid Park Holding Corp., (7) Patush, LLC, and (8) 183 West Alameda, LLC,

  Defendant(s).

---

## COMPLAINT
---

 Comes now the Plaintiff, Mr. Steven B. Silverstein, and brings his causes of actions against the Defendants as follows:

### I. Parties, Venue and Jurisdiction

**1.** Mr. Silverstein is a resident and citizen of Oklahoma, now and since prior to the filing of this action. Mr. Silverstein has not been domiciled anywhere but Oklahoma during the last ten years. Mr. Silverstein has judgments against Jeffrey A. Wolf, Jean Wolf, JTG Ventures, LLC and ORB Ltd (hereafter collectively the "judgment debtors") arising from Tulsa County Case No. CJ-2017-1400 upon which more than $1,750,000 remains owed. Jeffrey A. Wolf is also a defendant in a malicious prosecution action pending in Tulsa County, Oklahoma, an action in which the quantum of his liability has not yet been established.

**2.** Jeffrey A. Wolf is a resident and citizen Colorado, now and since prior to the filing of this action. Jeffrey A. Wolf's address is 32120 RCR 14 C, Steamboat Springs, CO 80477. Jeffrey A. Wolf has never been domiciled in, or a citizen of, Oklahoma.

**3.** Jean Wolf is a resident and citizen of Colorado, now and since prior to the filing of this action. Jean Wolf's address is 32120 RCR 14 C, Steamboat Springs, CO 80477. Jean Wolf has never been domiciled in, or a citizen of, Oklahoma.

**4.** JTG Ventures, LLC ("JTG Ventures") is a single member limited liability company with Jeffrey A. Wolf as its sole owner. It is believed that JTG Ventures is no longer a viable entity. The Secretaries of State in both Nevada (the company's place of initial formation) and Colorado (the company's principal place of business) indicate that the entity is not in good standing as a limited liability company. The Secretary of State in Oklahoma shows the registration of JTG Ventures to do business in Oklahoma as a foreign entity was cancelled before this action was filed. JTG Ventures has never had a principal place of business in Oklahoma.

**5.** ORB LTD ("ORB") is a South Dakota corporation owned by either Jeffrey A. Wolf and/or Jean Wolf. The South Dakota Secretary of State shows Jean Wolf to have incorporated the entity, but testimony and filings with the Tulsa County District Court by the Wolfs make it unclear which of them currently owns the corporation. During its operation, ORB Ltd had a principal place of business in Colorado. The decision makers for ORB Ltd resided in Colorado, banked in Colorado, and identified a Colorado address as the principal place of business for the company. ORB Ltd has never had a principal place of business in Oklahoma. ORB Ltd is not now, nor has it previously been, registered to do business in Oklahoma.

**6.** KIVA, LLC ("KIVA") is a non Oklahoma limited liability company with Jeffrey A. Wolf as its sole owner. It is believed that KIVA, LLC is a dissolved entity in Colorado, but still capable of suing and of being sued. The records of the Secretary of State in Oklahoma indicate that KIVA, LLC is not now doing, nor has it previously done, business in Oklahoma. KIVA is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

7. The Wheatley Irrevocable Trust ("Wheatley Trust") is a non Oklahoma trust with its principal place of business in Colorado and with Jeffrey A. Wolf as its trustee. The records of the Secretary of State in Oklahoma indicate that Wheatley Trust is not now doing, nor has it previously done, business in Oklahoma. Wheatley Trust is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

8. Meshakai Wolf is a resident and citizen of Florida, now and since prior to the filing of this action. Meshakai Wolf has never been domiciled in, or a citizen of, Oklahoma. Meshakai Wolf has regular and systematic contact with the State of Colorado such that he is at home in Colorado. The liability alleged against Meshakai Wolf arises from actions which he took in Colorado. Meshakai Wolf is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

9. Rapid Park Holding Corporation ("Rapid Park") is a New York business entity with its founder and manager (Defendant Jeffrey A. Wolf) operating the business from Steamboat Springs, CO. Rapid Park is not now, nor has it previously been, registered to do business in Oklahoma. The liability alleged against Rapid Park arises from financial transactions and sham property transfers by Rapid Park orchestrated in Colorado, involves the routine transfer of funds fraudulently to Colorado by Rapid Park and involves Rapid Parks efforts to hinder, delay and defraud Plaintiff in Colorado. Rapid Park was summoned as a garnishee to this Court in Case No. 22-rj-1, and thereafter appeared in that case without a motion challenging jurisdiction. To the extent Rapid Park ever held a valid objection to personal jurisdiction in this Court, it has been waived. Rapid Park is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

**10.** Patush, LLC ("Patush") is a Nevada limited liability company with Jeffrey A. Wolf as its sole owner. It is believed that Patush is a dissolved entity in Nevada, but still capable of suing and of being sued. The records of the Secretary of State in Oklahoma indicate that Patush is not now doing, nor has it previously done, business in Oklahoma. Patush is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

**11.** 183 West Alameda, LLC ("West Alameda") is a Colorado limited liability company with Jeffrey A. Wolf as its West Alameda's only known member and manager. West Alameda is a going concern operating in the marijuana business. West Alameda's principal place of business is in Denver, Colorado. The records of the Secretary of State in Oklahoma indicate that West Alameda is not now doing, nor has it previously done, business in Oklahoma. West Alameda is liable herein for fraudulent transfers undertaken with and on behalf of Jeffrey A. Wolf.

**12.** Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties have complete diversity, as detailed above. Also, the matter in controversy exceeds $75,000. As detailed above and in other records before this Court the amount in controversy exceeds $1,750,000.

## II.    Factual Allegations

**13.** Plaintiff and Jeffrey A. Wolf were long time business affiliates in a joint venture which invested in real property in Tulsa, Oklahoma.

**14.** In 2017 Jeffrey A. Wolf and JTG Ventures filed suit against Plaintiff in Tulsa County Case No. CJ-2017-1400. The suit broadened to include counterclaims against Jeffrey A. Wolf and JTG Ventures, and third party claims against Jean Wolf and ORB. The end result of the case was a final judgment in favor of Plaintiff and against Jeffrey A. Wolf, Jean Wolf, JTG Ventures, and ORB.

**15.** The suit involved sequential judgments. First, a summary judgment establishing liability only, but reserving damages, was entered on October 13, 2020. Next, a judgment on the jury's verdict established damages, including punitive damages, on October 11, 2021. Finally, a judgment was entered for costs, fees and interest on March 4, 2022. None of the judgments were appealed. All are final.

**16.** After the claims made by Plaintiff herein which ripened into the judgments in his favor, the Defendants engaged in a series of fraudulent transfers and efforts to hide assets. Similar schemes were utilized by the judgment debtors well before Plaintiff's claims as Jeffrey A. Wolf was engaged in a nearly decade long tax fraud which resulted in his felony conviction in New York, and in his civil liability to the Internal Revenue Service. The use of fraudulent transfers to evade the financial obligations of Jeffrey A. Wolf, by Wolf and his companies, is not new but rather part of an historical and general modus operandi. Wolf bragged about using his companies and his lawyers to avoid creditors by, among other nefarious means, routing funds through banks in Liechtenstein.

**17.** One fraudulent transfer at issue in this case involved transfers of real property identified as 2780 S Ocean Blvd, Unit 402, Palm Beach, FL 33480 (the "Palm Beach Condo").

**18.** The Palm Beach Condo was, in truth, property of Jeffrey A. Wolf.

**19.** Wheatley Trust, Jean Wolf and Meshakai Wolf acted at various times as straw persons who were either alter ego's of the judgment debtors or were nominees of judgment debtors. These Defendants neither held nor hold true title, did not pay fair value for the property at issue, are insiders to the judgment debtors and were involved in the scheme to defraud Plaintiff by concealing assets of the judgment debtors.

**20.** Meshakai Wolf took apparent title interest in the Palm Beach Condo and held that apparent interest until December 14, 2020. As of the transfer of the Palm Beach Condo at issue on December 14, 2020, Meshakai remained the record owner of the Palm Beach Condo though, as shown below, this is admitted to be false.

**21.** Meshakai Wolf did not pay fair value for the property, did not pay for the maintenance costs of the property and was a sham holder of title intended to conceal the judgment debtor's real interest in the Palm Beach Condo. At all times relevant, the true owner was Jeffrey A. Wolf.

**22.** The motive behind the pretense that Meshakai Wolf was the owner of the Palm Beach Condo was to conceal that asset from taxing authorities. The appearance of Meshakai Wolf's ownership began at a time when the judgment debtors were embarking upon a fraudulent tax scheme which entailed the evasion of taxes from 2004 to 2012. The scheme is not hypothetical, but was the subject of a 2012 felony fraud conviction against Jeffrey A. Wolf in New York, and was the subject of an Internal Revenue Service tax warrant and civil liability against Wolf contemporaneously with the conviction.

**23.** That true title to the Palm Beach Condo was in Jeffrey A. Wolf is admitted by the judgment debtors. In 2012, Jeffrey A. Wolf admitted in writing that the Palm Beach Condo was owned by him (not by Meshakai Wolf and not Jean Wolf). Jean Wolf executed a written and recorded assignment on December 14, 2020 which purported to assign all of her "right, leasehold title and interest" in the Palm Beach Condo to the Wheatley Trust, and provided a written warranty that she (not Meshakai Wolf) was a title owner since at least 2017. Meshakai Wolf acted similarly, purporting to transfer title in the Palm Beach Condo to the Wheatley Trust.

**24.** The motive behind the pretense that the Wheatley Trust owned the Palm Beach Condo, was to conceal that asset from Plaintiff as a judgment creditor. On October 8, 2020 the Wheatly

6

trust was formed.  This was just one month after the trial judge in Tulsa County Case No. CJ-2017-1400 warned the judgment debtors in open court that a judgment was coming,[1] and just five days before that trial judge actually rendered summary judgment against the judgment debtors.  On December 14, 2020, just two months after the October 13, 2020 summary judgment against the judgment debtors, the judgment debtors purported to transfer their title interest in the Palm Beach Condo to the newly formed Wheatley Trust.

**25.** The holding of the Palm Beach Condo in any name other than Jeffrey A. Wolf was a sham intended to first hinder, delay and defraud the taxing authorities (who ultimately pierced the veil of that sham) and then Plaintiff as judgment creditor.  Having failed to succeed in the sham as to those taxing authorities, and in a further effort to protect the Palm Beach Condo from Plaintiff as Plaintiff was obtaining a judgment against the judgment debtors, the judgment debtors took the additional steps of creating a new trust, then fraudulently documenting a transfer of the rights and title to the Palm Beach Condo to the new trust.

**26.** This transfer constitutes a fraudulent transfer.  The transfer was without fair consideration for the value of the Palm Beach Condo.  In close proximity to the transfer, the judgment debtors represented to the trial court in Tulsa County Case No. CJ-2017-1400 that they had insufficient funds to be able to afford legal counsel, thus they certainly had insufficient money to fund a newly

---

[1] All hearings in the underlying case were transcribed by a certified short hand reporter and transcripts can be ordered as further evidence.  The docket, however, is readily available online at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CJ-2017-1400&cmid=3041457.  The minute entered on 8-13-2020 shows that the judgment debtors were "already in direct violation of a court order" and orders them to appear in person on 9-3-2020.  Then, the 9-3-2020 minute recognizes the personal appearance of the judgment debtors, and memorializes the trial judge's admonition that judgment would be coming following the summary judgment filings.  The summary judgment was then filed on 10-13-20.  In short, leading up to the formation of Wheatley Trust on 10-8-2020, the judgment debtors' financial situation was in dire jeopardy from contempt and sanction proceedings as well as from summary judgment proceedings.

formed trust such that the trust could pay for a property with an appraised value of approximately $500,000 and an actual value of more than twice that amount.[2] Alternatively, if the judgment debtors did, in fact, fund the trust with sufficient money to pay fair value for the Palm Beach Condo, the transfer of that amount of cash to the Wheatley Trust was a fraudulent transfer, and the money has been maintained in a name other than Jeffrey A. Wolf's in order to facilitate Wolf's evasion of creditors.

**27.** The transfer was to an insider. Jeffrey Wolf is identified on the transferring instrument as the trustee of the Wheatley Trust.

**28.** The transfer was made for the purpose of concealing the property from Plaintiff, as a judgment creditor. The judgment debtors had actual intent to hinder, delay and defraud Plaintiff in Plaintiff's collection of the judgments.

**29.** The transfer was of substantially all of Jeffrey A. Wolf's assets.

**30.** Even if the transfer was not a fraudulent transfer, it can be set aside based on the nature of the title holders as either alter egos of the judgment debtors and/or nominees of the judgment debtors. All control over the Palm Beach Condo remained, at all times, in Jeffrey A. Wolf, and the transfers must be set aside in equity.

**31.** This is not the only fraudulently transferred property at issue. The same instrument transferring the Palm Beach Condo also transfers in similar fashion other real property in Palm Beach Florida identified as "the South 290 feet of the North 4025 feet of Section 23, Township 44 South, Range 43 East, lying East of State Road A-1-A, together with any littoral and riparian rights thereunto appertaining". Further still, on information and belief, other real and personal property was similarly transferred.

---

[2] A market analysis shows the true value to be more than twice the assessed value.

**32.** A separate but related fraudulent transfer scheme was embarked upon by the judgment debtors and Defendant Rapid Park, a corporation formed by, and controlled by, Jeffrey A. Wolf.

**33.** Jeffrey A. Wolf owns and controls Defendant Rapid Park Holding Corporation from Steamboat Springs, Colorado, and has done so for more than a decade. Jeffrey A. Wolf is not a mere investor in Rapid Park, he is the founder of the company. Jeffrey A. Wolf formed and owned dozens of companies in the past in which he has conducted business, and developed the name "Rapid Park Holding Company" as a holding company to cover his various businesses operating parking lots. Jeffrey A. Wolf originally held 50% of the stock in his individual capacity, but has since reduced that amount to 25% - the remaining 75% being owned and controlled by Jeffrey A. Wolf's siblings (i.e. insiders). Jeffrey A. Wolf operates the company from his home in Colorado.

**34.** Rapid Park, especially through the actions of Jeffrey A. Wolf and Rapid Park's Controller Frank Rico, were actively involved in the underlying conduct in Tulsa, Oklahoma which gave rise to the judgments, as well as to the post-judgment fraudulent transfers which took place in Colorado.

**35.** As far back as 2012, Frank Rico, acting in the capacity of Controller of Rapid Park, was working for Jeffrey A. Wolf and aiding Wolf in activities in Tulsa County by, among other things, providing details to a local bank regarding Wolf's ownership and control of Rapid Park, and Wolf's "annual income" from the company.

**36.** Jeffrey A. Wolf's personal ownership in Rapid Park has been admitted. Wolf, Rico and Rapid Park admitted, since 2012, that Jeffrey A. Wolf's personal stock holdings in Rapid Park were 25% of the company, and that Wolf regularly received payments from Rapid Park in Colorado. This information was provided to a Tulsa bank in 2011 and 2012 for various loan

9

applications. Recently, Rapid Park admitted there have been no changes of ownership in Jeffrey A. Wolf's stock holdings in Rapid Park over the last ten (10) years.

**37.** Wolf, Rico and Rapid Park engaged in a joint effort intended to hinder, delay and defraud Plaintiff's collection efforts. These efforts took place in Colorado.

**38.** Wolf, Rico and Rapid Park fraudulently transferred Wolf's income since the liability at issue attached. Notably, the periodic payments admittedly owed to Wolf individually were, instead, paid to others after the claims were made in the underlying action. Specifically, Rico and Rapid Park arranged for the money owed to Jeffrey A. Wolf to instead be paid to "Evergreen Foundation" and "Patush, LLC". Neither Evergreen Foundation nor Patush was at the time of the transfers a legitimate business entity authorized to do business, or doing business, in any state. Wolf, Rico and Rapid Park used fictitious entities to hide Jeffrey A. Wolf's personal funds.

**39.** Additionally, on information and belief, Plaintiff expects that evidence will be obtained which will demonstrate Rapid Park's efforts to re-title Jeffrey A. Wolf's stock certificates into the name of another in an effort to frustrate Plaintiff's collection efforts against Colorado property. A subpoena was issued to Rapid Park in United States District Court for the District of Colorado case no 22-rj-001 seeking documentation of any changes in ownership during the last ten years, and it was admitted by Rapid Park that no documents exist. To the extent any transfer of the stock holdings actually took place, Plaintiff contends it would be a sham transaction, not supported by fair consideration, and subject to reversal as a fraudulent transfer.

**40.** These fraudulent transfers involving Rapid Park were made without any exchange of reasonably equivalent value. Neither Evergreen Foundation nor Patush paid for the benefits transferred to them. No person or entity paid reasonably equivalent value for any transfer of

Wolf's shares of stock in Rapid Park. Moreover, these transactions left Wolf unable to pay his debts.

**41.** Another distinct fraudulent transfer took place between Jeffrey A. Wolf, Jean Wolf and KIVA, LLC. This transfer involved real property located in Routt County, Colorado. Specifically, this transfer involved one property identified as 32120 County Road 14C and 36853 Tree Haus Drive.

**42.** Following the initiation of claims at issue in the underlying case, Jeffrey A. Wolf and Jean Wolf transferred these properties to Defendant KIVA. These transfers were intended to hinder, delay and defraud Plaintiff in Plaintiff's collection efforts.

**43.** KIVA is not now, nor was it ever, a going concern, but rather was used as a fictitious entity to be an apparent holder of title to this real property.

**44.** KIVA did not pay fair value for the real property, indeed KIVA had no money with which to make such a payment. The two parcels of real property have a combined value of more than $5,000,000.

**45.** Supporting the allegation of KIVA's holdings being a sham, Jeffrey A. Wolf and Jean Wolf are obligated on a mortgage secured by at least one of these properties (held by J.P. Morgan Chase Bank, National Association). The property was identified as belonging to the Wolfs individually in their loan application, and no disclosure of KIVA's interest or of a transfer to KIVA has been made to the lender.

**46.** This transfer was made for the purpose of concealing these parcels of real property from Plaintiff.

**47.** Jeffrey A. Wolf's willingness to engage in fraud is well established. Wolf has at least one conviction for felony fraud in New York, was pursued civilly for similar misconduct by the Internal Revenue Service, and has a judgment for fraud against him in the underlying case.

**48.** Wolf has admitted to the use of dozens of companies and that he holds his personal assets in those companies to avoid personal liability. These companies have no legitimate business purpose, do not file tax returns, and are not maintained as operating franchises in the places where they were formed. The places where they are formed are chosen to hide them, not because of a legitimate business purpose. These companies and entities are scattered throughout the country, including California, Nevada, Colorado, South Dakota, New York, and Florida. Wolf has bragged about being protected from personal responsibility by the use of these entities.

**49.** Wolf is an owner of Defendant West Alameda, operating in Denver, Colorado. West Alameda is concealing Wolf's income and financial benefits by helping Wolf to hide them from creditors. Like his other companies, Wolf is using West Alameda as an alter ego to hide assets from Plaintiff.

**50.** A charging order is sought against all entities in which Wolf has any interest. This includes, but is not limited to, KIVA, Patush, West Alameda, LLC and JTG Ventures.

**51.** Additionally, Plaintiff seeks an injunction preventing Defendants from transferring, encumbering or otherwise diminishing the value of his, her or its assets.

### III.   Prayer for Relief

Based upon the forgoing Plaintiff seeks relief against all Defendants. Plaintiff seeks an order enjoining the Defendants from any transfers of any interest in their property, seeks execution upon any assets held by the judgment debtors, and seeks any other relief in law or in equity which is deemed to be appropriate.

Plaintiff further seeks a judgment on all fraudulent transfers making all parties to the transfers liable for the full amount of the judgment, for any damages incurred by Plaintiff in obtaining relief, for all costs and attorney fees in bringing this action, for any other relief allowed under CO Rev. Stat. § 38-8-108, and for such other relief in law or in equity which is deemed to be appropriate.

Further still, Plaintiff seeks a declaration that KIVA, Wheatley Trust, Meshakai Wolf, Patush and West Alameda are alter egos of the judgment debtors and/or nominees of the judgment debtors, and that the assets of each such entity should be deemed to belong to Jeffrey A. Wolf for purposes of these proceedings.

Finally, Plaintiff seeks charging orders to be entered against JTG Ventures, KIVA, Patush, Wheatley Trust and West Alameda, as well as any other entities discovered which are owned in whole or in part by the judgment debtors, ordering funds owed to the judgment debtors to be paid to Plaintiff.

Respectfully submitted by:

s/ Stephen J Capron
Stephen J. Capron, Oklahoma Bar Association No. 18350
Capron & Edwards, PLLC
601 S Boulder Ave., Ste 600
Tulsa, OK 74119
Telephone: (918) 398-7600
E-mail: sjc@capronedwards.com
***Attorney for Plaintiff, Mr. Steven B. Silverstein***