IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01817-PAB-NRN

STEVEN B. SILVERSTEIN,

      Plaintiff,

v.

JEFFREY A. WOLF,
JEAN WOLF,
KIVA LLC,
WHEATLEY IRREVOCABLE TRUST,
MESHAKAI WOLF,
RAPID PARK HOLDING CORP.,
PATUSH, LLC,
183 WEST ALAMEDA, LLC,
MADISON FAMILY ENTERPRISES, LLC,
JOSHUA REY,
EVERGREEN FAMILY IRREVOCABLE TRUST, and
FOUNDATION FOR ARTS CULTURE & EDUCATION LTD.,

      Defendants.

---

## ORDER

---

      This matter comes before the Court on the Motion to Dismiss Second Amended Complaint [Docket No. 133], filed by defendant Rapid Park Holding Corp., and the Moving Defendants' Motion to Dismiss Second Amended Complaint for Improper Venue Under Rule 12(b)(3) or Transfer Venue Under 28 U.S.C. § 1404, and Partially Dismiss Under Rule 12(b)(6) [Docket No. 134], filed by defendants Jeffrey A. Wolf; Jean Wolf; Kiva LLC; Wheatley Irrevocable Trust; Patush, LLC; 183 W. Alameda, LLC; and Madison Family Enterprises, LLC (together, "Moving Defendants").

## I. BACKGROUND[1]

Mr. Silverstein filed this case on July 22, 2022 against defendants Jeffrey A. Wolf ("Mr. Wolf"), Jean Wolf ("Ms. Wolf"), KIVA LLC ("KIVA"), Wheatley Irrevocable Trust ("Wheatley"), Meshakai Wolf, Rapid Park Holding Corp. ("Rapid Park"), Patush, LLC ("Patush"), and 183 West Alameda, LLC ("West Alameda").  Docket No. 1.  Mr. Silverstein amended his complaint to include four additional defendants: Madison Family Enterprises, LLC ("Madison"), Joshua Rey, Evergreen Family Revocable Trust ("Evergreen Trust"), and Foundation for Arts Culture & Education Ltd. ("FACE").  Docket No. 125.  The dispute between the parties concerns judgments that were entered in a Tulsa County, Oklahoma case ("Tulsa Case") in favor of Mr. Silverstein and against defendants Mr. Wolf and Ms. Wolf, as well as two other entities ("Tulsa judgment debtors").  *Id.* at 6, ¶¶ 17-18.  The Oklahoma court entered summary judgment in favor of Mr. Silverstein as to liability on October 13, 2020, judgment establishing damages on October 11, 2021, and final judgment for costs, fees, and interest on March 4, 2022.  *Id.* at 6-7, ¶ 18.  The current amount of the judgments, with interest, is approximately $2,000,000.  *Id.*

Mr. Silverstein alleges that defendants "engaged in a series of fraudulent transfers and efforts to hide assets" in an effort to frustrate Mr. Silverstein's ability to collect the judgments in the Tulsa Case.  *Id.* at 7, 13-14, ¶¶ 19, 44.  The complaint identifies six transfers that allegedly violate the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-105.  *Id.* at 7-27, ¶¶ 20-115.

---

[1] The facts below are taken from plaintiff's Second Amended Complaint ("complaint"), Docket No. 125, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motions to dismiss.

### A.  Palm Beach Condominium Stock

The "Palm Beach Condominium" is a condominium located at 2780 S. Ocean Blvd, Unit 402, in Palm Beach, Florida.  *Id.* at 7, ¶ 20.  The Palm Beach Condominium is owned by the Ambassador II Corporation, and the "rights to the Palm Beach Condo[minium] are purchased and sold through stock in the Ambassador II Corporation" ("Palm Beach Condominium Stock").  *Id.*  On December 14, 2020, Ms. Wolf transferred the rights to the Palm Beach Condominium and the Palm Beach Condominium Stock to Wheatley, a trust whose sole trustee is Mr. Wolf.  *Id.* at 9, ¶ 27; Docket No. 32 at 2, ¶ 3; Docket No. 148-13.  The instrument assigning the rights to the Palm Beach Condominium and Palm Beach Condominium Stock to Wheatley was notarized in Palm Beach County, Florida.  Docket No. 148-13 at 2-4.  The transfer took place two months after the court in the Tulsa Case entered summary judgment in favor of Mr. Silverstein and against the Tulsa judgment debtors.  Docket No. 125 at 10, ¶ 28. However, Mr. Wolf maintained control over the Palm Beach Condominium Stock both before and after the transfer.  *Id.* at 11, ¶ 32.  The complaint alleges that the "holding of the Palm Beach Condo[minium] stock in any name other than Jeffrey A. Wolf was a sham intended to first hinder, delay and defraud the taxing authorities (who ultimately pierced the veil of that sham) and then to hinder, delay and defraud Plaintiff as judgment creditor."  *Id.* at 10, ¶ 29.

### B.  Income from Rapid Park Stock

Mr. Wolf holds 25% of the stock in Rapid Park.  *Id.* at 13-14, ¶¶ 42, 46.  After Mr. Silverstein asserted claims against Mr. Wolf in the Tulsa Case,[2] Mr. Wolf and Rapid Park arranged for the annual income owed to Mr. Wolf to be paid to Evergreen Foundation,[3] Patush, and Jewel, LLC.  *Id.* at 15, ¶ 48.  The banks used to deposit the funds are located in Steamboat Springs, Colorado.  *Id.* at 13, ¶ 43.  Mr. Silverstein alleges that Evergreen Foundation, Patush, and Jewel, LLC are not legitimate business entities, but rather are fictitious entities used to hide Mr. Wolf's personal funds from Mr. Silverstein.  *Id.* at 15-16, ¶¶ 49-50.  The transfers of Mr. Wolf's income from his Rapid Park stock to these entities were the result of a "joint effort" by Mr. Wolf, Rapid Park, and the Controller of Rapid Park, Frank Rico, "pursuant to an agreement intended to hinder, delay and defraud Plaintiff's collection efforts."  *Id.* at 14, ¶¶ 45, 47.

### C.  Rapid Park Stock

On December 29, 2022, Mr. Wolf, Rapid Park, and Mr. Rey, who helped Mr. Wolf form Madison, transferred Mr. Wolf's stock in Rapid Park to Madison.  *Id.* at 18-19, ¶¶ 61, 63, 65.  Madison is an LLC with Mr. Wolf as its "only known member and manager."  *Id.* at 4, ¶ 11.  The complaint states that the transfer "took place in Steamboat Springs, Colorado."  *Id.* at 18, ¶ 64.  The transfer was made without consideration and for the purpose of avoiding debt to Mr. Silverstein and occurred after

---

[2] The complaint states that "the annual income . . . owed to Jeffrey A. Wolf individually was . . . paid to others after Plaintiff's claims were made in the underlying action."  Docket No. 125 at 15, ¶ 48.  The Court interprets this statement to mean that the transfers occurred after Mr. Silverstein filed claims in the Tulsa Case.

[3] This entity appears to be distinct from defendant Evergreen Trust.

Mr. Wolf obtained actual notice of a writ of garnishment regarding his Rapid Park stock. *Id.* at 18, 20, ¶¶ 64, 70.

### D.  Routt County Property

Prior to July 25, 2022, defendant KIVA held title to real property located at 32120 County Road 14C in Routt County, Colorado ("Routt County Property"). *Id.* at 21, ¶¶ 77, 79.  Mr. Silverstein alleges that, although the Routt County Property was held in KIVA's name, "the property was in truth owned and controlled by" Mr. Wolf and Ms. Wolf because KIVA is a fictitious entity. *Id.*, ¶¶ 78, 80.  On July 25, 2022, KIVA transferred the Routt County Property to defendant FACE. *Id.*, ¶ 79.  Mr. Silverstein alleges that FACE is also a fictitious entity owned and controlled by Mr. Wolf. *Id.*  The transfer of the Routt County Property from KIVA to FACE was "part of a larger scheme to conceal all of [Mr. Wolf's and Ms. Wolf's] assets" and to prevent Mr. Silverstein from collecting on his judgments. *Id.* at 22, ¶¶ 87, 89.

### E.  Tulsa Condominiums

On June 22, 2020, JTG Ventures, an LLC with Mr. Wolf as its sole member, transferred real property consisting of 87 condominiums in Tulsa County, Oklahoma ("Tulsa Condominiums") to Evergreen Trust. *Id.* at 23, ¶¶ 92-94.  Mr. Silverstein alleges that Evergreen Trust is a fictitious entity controlled by Mr. Wolf and that the transfer was "part of an intentional design to keep [the Tulsa Condominiums] from Plaintiff's collection efforts." *Id.* at 2, 23-24, ¶¶ 4, 94-95.

### F.  Income from Marijuana Business

The complaint alleges that, since the judgments in the Tulsa Case, Mr. Wolf, Ms. Wolf, and West Alameda have been participating in a "scheme involv[ing] the derivation

of proceeds from a marijuana business in Denver, Colorado by Jeffrey A. Wolf and Ms. Wolf, and the use of an alter ego – West Alameda – to receive the income from the business in a name other than the judgment debtors'." *Id.* at 25, ¶ 105. The complaint does not identify the marijuana business, but alleges that Mr. Wolf and Ms. Wolf are its "true owners" and states that "West Alameda was set up as an alter ego entity" to conceal the business's true ownership from creditors and state regulators of the marijuana industry. *Id.*, ¶ 106. "Specifically, Jeffrey A. Wolf and Jean Wolf have been receiving their proceeds from the business through West Alameda then transferring that income to other entities for use by Jeffrey A. Wolf and Jean Wolf." *Id.* at 25-26, ¶ 107. Mr. Silverstein alleges that the transfers of income from the marijuana business are part of the larger scheme to conceal assets from Mr. Silverstein and prevent his ability to collect on the judgments from the Tulsa Case. *Id.* at 26, ¶¶ 112-13.

Mr. Silverstein brings a claim for fraudulent transfer under CUFTA for each of these transfers. *Id.* at 7-27, ¶¶ 20-115. In addition, the complaint brings a claim for civil conspiracy on the basis that "[e]ach of the transfers detailed above constitute [sic] actionable civil conspiracies by the participants. In each separate transfer, Plaintiff alleges the participants (who are the judgment creditors, their alter egos, insiders and/or family members) are also guilty of civil conspiracy based on the fraudulent transfers." *Id.* at 27, ¶ 116.

On September 1, 2023, Rapid Park filed a motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) and 8. Docket No. 133. Mr. Silverstein responded, Docket No. 149, and Rapid Park replied. Docket No. 154. On September 1, 2023, the Moving Defendants also filed a motion to dismiss the claim concerning the

Tulsa Condominiums under Rule 12(b)(6) and dismiss the complaint under Rule

12(b)(3) or to transfer venue.  Docket No. 134.  Mr. Silverstein responded, Docket No.

148, and the Moving Defendants replied.  Docket No. 155.

## II. LEGAL STANDARD

### A.  Rule 12(b)(2)[4]

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether

the Court has personal jurisdiction over a defendant.  Plaintiff bears the burden of

establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th

Cir. 1988).  Plaintiff can satisfy his burden by making a *prima facie* showing.  *Dudnikov*,

514 F.3d at 1070.  A court will accept the well-pled allegations of the complaint as true

in determining whether plaintiff has made a *prima facie* showing that personal

jurisdiction exists.  *Ditter v. Subaru Corp.*, No. 20-cv-02908-PAB-MEH, 2022 WL

889102, at *2 (D. Colo. Mar. 25, 2022) (citing *AST Sports Sci., Inc. v. CLF Distribution*

*Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)).  If the presence or absence of personal

---

[4] The Tenth Circuit has noted that the extent of a plaintiff's burden to establish
personal jurisdiction and the scope of a court's review "depend in part on the nature of
the district court's response to defendants' motion seeking dismissal for lack of personal
jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th
Cir. 2008).  "A district court has discretion to resolve such a motion in a variety of ways
– including by reference to the complaint and affidavits, a pre-trial evidentiary hearing,
or sometimes at trial itself."  *Id*.  Here, no party requests an evidentiary hearing;
however, both Rapid Park and Mr. Silverstein submit evidence in support of their
positions.  The Court therefore will exercise its discretion to resolve Rapid Park's motion
based on the documents submitted by the parties.  This decision dictates the standard
of review applied.  *Id*. at 1070.  When, as here, personal jurisdiction is reviewed on the
basis of the complaint and affidavits, the court "tak[es] as true all well-pled (that is,
plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint."
*Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–62 (2007)).  "Similarly, any
factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id*. (citing
*FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)).

jurisdiction can be established by reference to the complaint, the court need not look further.  *Id*.

However, the plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."  *Tompkins v. Exec. Comm. of S. Baptist Convention*, 2015 WL 1568944, at *4 (D.N.M. Mar. 31, 2015), *aff'd sub nom. Tompkins v. Lifeway Christian Res. of the S. Baptist Convention*, 671 F. App'x 1034 (10th Cir. 2016) (unpublished) (quoting *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *AST Sports Sci.*, 514 F.3d at 1057; *see also Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov*, 514 F.3d at 1070.

## B.  Rule 12(b)(3)

In reviewing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), all "well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.  A district court may examine facts outside the complaint to determine whether its venue is proper." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012) (quoting 5B Charles Alan Wright, et al., *Federal Practice & Procedure* § 1352 (2004)).  The court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  *Id.* at 1261 (quotation and citation omitted).  However, once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district.

*See Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998); 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1352 (3d ed. 2015) (noting that imposing burden on plaintiff "seems correct inasmuch as it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue").

### C.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Twombly*, 550 U.S. at 570).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –  but it has not shown –  that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his]

claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

### A.  Personal Jurisdiction Over Rapid Park

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070 (applying Colorado law); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021) (applying Colorado law). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming

10

jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  *Ditter*, 2022 WL 889102, at *2.

Rapid Park argues that it is not subject to general or specific jurisdiction in Colorado.  Docket No. 133 at 4-13.  Mr. Silverstein contends that the Court may exercise both general and specific jurisdiction over Rapid Park.[5]  Docket No. 149 at 6-14.

### 1. General Jurisdiction

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021) (citation omitted).  A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state.  *Id*.  A corporation is subject to general jurisdiction in "its place of incorporation and principal place of business."  *Id*. at 359; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (for corporations, "the place of incorporation and principal place of business are 'paradigm bases for general jurisdiction.'" (citation, quotations, and alterations omitted)).

Rapid Park is a Delaware corporation that maintains a principal place of business in New York.  Docket No. 133-1 at ¶ 2.  Therefore, Rapid Park is not subject to general

---

[5] Mr. Silverstein also argues that Rapid Park "has demonstrated consent to jurisdiction in this Court" because, in a different action before the Court, Rapid Park filed an answer to a writ of garnishment and has not moved to dismiss that writ.  Docket No. 149 at 4.  However, Mr. Silverstein provides no authority in support of the premise that, by consenting to jurisdiction in one action, a defendant waives its ability to object to personal jurisdiction in all other actions coming before the same court.

personal jurisdiction in Colorado on the basis of incorporation and principal place of business.  Mr. Silverstein argues that the Court may exercise general jurisdiction over Rapid Park based on "the dozens of distinct payments made by [Rapid Park] to Wolf's various entities to shield Wolf from financial liability over the course of years, and the transfer of $35,000,000 in stock out of Colorado and to an out of state entity."  Docket No. 149 at 7.  According to Mr. Silverstein, these alleged activities "constitute the regular and systematic commission of torts within Colorado," rendering Rapid Park subject to general jurisdiction in Colorado.  *Id.*  However, for purposes of determining general jurisdiction, courts do not consider "whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' [but] whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State,'" such that suit on causes of action arising from dealings that are distinct from the corporation's affiliations with the state would be justified.  *Daimler AG*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown,* 564 U.S. 915, 919 (2011)); *see also In re Marriage of Green*, 547 P.3d 1095, 1099 (Colo. 2024) (holding that, although "states may exercise general personal jurisdiction over nonresident corporations which have contacts that are so continuous and systematic as to render them essentially at home in the forum state[,] . . .this standard is applied strictly, and a nonresident corporate defendant's contacts rarely justify the exercise of general jurisdiction") (citations and quotations omitted). Thus, alleged "regular and systematic commission of torts within Colorado," *see* Docket No. 149 at 7, are not the kind of continuous and systematic affiliations with Colorado

that would give rise to general jurisdiction.  The Court therefore finds that it does not have general personal jurisdiction over Rapid Park.

### 2.  Specific Jurisdiction

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal*., 582 U.S. 255, 262 (2017).  That is, a "plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts."  *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)); *see also Hood*, 21 F.4th at 1221-22.  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).  The "common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum.'"  *Ford Motor Co*., 592 U.S. at 362 (quoting *Bristol-Myers*, 582 U.S. at 262).  This rule does not require "proof of causation" between "a plaintiff's suit and a defendant's activities."  *Id*.  "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov*, 514 F.3d at 1078.

The specific jurisdiction analysis is two-fold.  First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State."  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).  "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'"  *Ford Motor Co.*, 592 U.S. at 359(quoting *Burger King*, 471 U.S. at 475); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State").  "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotation marks and alterations omitted)).  Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  *Asahi*, 480 U.S. at 105.

### a. *Calder* test

Mr. Silverstein alleges that Rapid Park participated in two types of fraudulent transfers.  First, he alleges that "Jeffrey A. Wolf and Rapid Park arranged for the money owed to Jeffrey A. Wolf to instead be paid to 'Evergreen Foundation,' 'Patush, LLC' and

'Jewel, LLC.'"  Docket No. 125 at 15, ¶ 48.  Second, Mr. Silverstein alleges that "Jeffrey A. Wolf, Rey and Rapid Park acted jointly to transfer Jeffrey A. Wolf's stock certificates in Rapid Park to Madison."  *Id.* at 18, ¶ 61.  Mr. Silverstein alleges that these transfers took place in Colorado.  *Id.* at 14, 18, ¶¶ 47, 64.

Rapid Park argues that Mr. Silverstein has failed to demonstrate that Rapid Park has minimum contacts with the state of Colorado because "there is no alleged conduct by Rapid Park purposefully directed toward Colorado or a Colorado resident."  Docket No. 133 at 8.  Mr. Silverstein responds that Rapid Park has minimum contacts with Colorado because "the fraudulent transfers took place in Colorado, and took place for the purpose of depriving Plaintiff of Plaintiff's rights to satisfy his judgments from those Colorado assets."[6]  Docket No. 149 at 11.  Mr. Silverstein claims that the Court may therefore exercise specific personal jurisdiction over Rapid Park based on the *Calder* test.  *Id.*; *see Calder*, 465 U.S. at 789.

The Tenth Circuit has held that, under *Calder*, a defendant has purposefully directed its activities at a forum state, and therefore has had sufficient minimum contacts with the forum state to justify the exercise of specific personal jurisdiction, if it conducted (1) an intentional action that is (2) expressly aimed at the forum state, with

---

[6] Mr. Silverstein also argues that the "commission of a tort within a state by a non-resident tortfeasor amounts to sufficient minimum contacts with the state where the tort occurred or where the injury occurred to support specific personal jurisdiction."  Docket No. 149 at 8 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1994); *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 400 (5th Cir. 2009); *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 345 (5th Cir. 2014) (unpublished); *In re Akbari-Shahmirzadi*, 2016 WL 6783245, at *3-4 (Bankr. D.N.M. Nov. 14, 2016)).  However, none of the cases Mr. Silverstein cites support the proposition that the commission of a tort in the forum state, alone, establishes minimum contacts for the purposes of specific personal jurisdiction.  Moreover, this proposition is contrary to controlling law concerning specific personal jurisdiction.  *See, e.g., Burger King*, 471 U.S. at 472.

(3) knowledge that the brunt of the injury would be felt in the forum state.  *Dudnikov*, 514 F.3d at 1072.  The Tenth Circuit has "taken a somewhat . . . restrictive approach," *id.* at 1074 n.9, and has held that, in order to satisfy *Calder*'s second prong, "the forum state must be the 'focal point' of the defendant's tortious conduct."  *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 969 (10th Cir. 2022) (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013)) (emphasis omitted).  "Stated differently, 'the defendant's conduct [must] connect[ ] him to the forum in a meaningful way.'"  *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)) (emphasis omitted).

Mr. Silverstein claims that "courts have held with 'near uniformity' that fraudulent transfers in the forum state are sufficient evidence on which to premise specific personal jurisdiction."  Docket No. 149 at 11.  This assertion appears to be based on *Akbari-Shahmirzadi*, 2016 WL 6783245, at *3-4, which states that courts "have held with near uniformity that they have personal jurisdiction to hear fraudulent transfer cases under the *Calder* analysis, even when the transfer is the only contact between the debtor and the foreign transferee."  Docket No. 149 at 8.  However, *Akbari-Shahmirzadi* and the cases it cites do not stand for the principle that specific personal jurisdiction can be premised on "fraudulent transfers in the forum state."  *See id.* at 11.  Rather, courts in those cases found that specific personal jurisdiction existed in the forum where a defrauded creditor—i.e., the victim of the fraudulent transfer—was located, not the location where the fraudulent transfer occurred.  *See Akbari-Shahmirzadi*, 2016 WL 6783245, at *3-4 (holding that foreign defendant had sufficient minimum contacts with the United States because the alleged fraudulent transfer "was sure to hurt Debtor's creditors, and therefore was expressly aimed by the recipient and the transferor at the

16

forum jurisdiction (the United States)"); *Sugartown Worldwide LLC v. Shanks*, 2015 WL 1312572, at *2, *6 (E.D. Pa. Mar. 24, 2015) (holding that Pennsylvania court could exercise specific jurisdiction over defendant because defendant knew that its fraudulent transfers would injure a Pennsylvania LLC, even though defendant had never traveled to Pennsylvania, did not own Property within Pennsylvania, and did not maintain any bank accounts in Pennsylvania); *Mullins*, 564 F.3d at 402 (holding that Texas could exercise specific jurisdiction over defendant New York partnership because the partnership "should reasonably have anticipated being haled into a Texas court for precipitating and directing an alleged fraudulent transfer at the expense of a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas"); *Dontos*, 582 F. App'x at 345 ("While this court is hesitant to make *per se* rules regarding the fact-specific minimum contacts analysis, a debtor who is liable under [the Texas Uniform Fraudulent Transfer Act] to a Texas resident is likely subject to suit in the creditor's forum state because the debtor acted with . . . fraudulent intent to expressly aim their conduct at a creditor in the forum, where the tort's harm was felt." (citation omitted)); *see also Racher v. Lusk*, 2013 WL 6037122, at *3 (W.D. Okla. Nov. 14, 2013); *Sourcing Mgmt., Inc. v. Simclar, Inc.*, 118 F. Supp. 3d 899, 911-12 (N.D. Tex. 2015); *Gambone v. Lite Rock Drywall*, 288 F. App'x  9, 14 (3rd Cir. 2008) (unpublished).

Thus, the weight of legal authority holds that fraudulent transfers are "expressly aimed" at the state of the defrauded creditor and that the *Calder* test is satisfied where the debtor knew that the brunt of the injury would be borne by the defrauded creditor in the forum state.  Here, Mr. Silverstein is a resident and citizen of Oklahoma.  *See*

Docket No. 125 at 1, ¶ 1.  Thus, the allegedly fraudulent transfers do not satisfy the second prong of the *Calder* test because they were not "expressly aimed" at Colorado. *See Dudnikov,* 514 F.3d at 1072.  Moreover, Mr. Silverstein has not put forth any allegations or evidence indicating that Rapid Park knew that the brunt of the injury caused by the fraudulent transfers would be felt in Colorado.[7]  As such, he has failed to satisfy the third prong of the *Calder* test.  *Id.*  Accordingly, the Court finds that Mr. Silverstein has failed to show that Rapid Park purposefully directed its activities at Colorado under the *Calder* test by taking part in the allegedly fraudulent transfers and has therefore failed to establish that Rapid Park has minimum contacts with Colorado on this basis.

### b.  *Conducting business in Colorado*

Rapid Park argues that the complaint "does not contain any allegations concerning Rapid Park's actions that demonstrate that Rapid Park – as opposed to Jeffrey A. Wolf – purposefully availed itself of the privilege of conducting business" in Colorado.  Docket No. 133 at 11.  Mr. Silverstein responds that he "is not suing [Rapid Park] for conducting 'business' as a parking lot operation in Colorado, Plaintiff is suing [Rapid Park] for conducting fraudulent transfers (torts) in Colorado and for the engagement in a civil conspiracy in Colorado."  Docket No. 149 at 5.  Thus, it does not appear that Mr. Silverstein is arguing that the Court has jurisdiction over Rapid Park because Rapid Park conducts business in Colorado.

---

[7] This is unsurprising since Mr. Silverstien, the allegedly defrauded creditor, is not a Colorado citizen.

Instead, Mr. Silverstein appears to argue that Mr. Wolf controls Rapid Park and therefore Mr. Wolf's Colorado contacts give rise to personal jurisdiction over Rapid Park.  Mr. Silverstein argues that Rapid Park purposely directed its activities at Colorado because "[h]ere, we have Wolf, acting as an agent, officer (Treasurer), director and owner of [Rapid Park] in Colorado, using his office as Treasurer to make dozens of fraudulent transfers of income in coordination with his siblings, who also were operating on behalf of [Rapid Park]."  Docket No. 149 at 10.  Mr. Silverstein also argues that, "[w]hen Wolf, acting as the Treasurer, uses [Rapid Park] to send money owed to Wolf to one of Wolf's entities, [Rapid Park] is directly involved."  *Id.* at 12-13.  However, the Tenth Circuit has rejected this theory of personal jurisdiction.  *See Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990) ("The dominated corporation does not direct and control its . . . individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego. . . .  Corporate defendants are entitled to defend their status as real legal entities. . . in a forum with which they themselves have sufficient contacts to subject them to service of process.") (citations omitted).  The Court finds that Mr. Silverstein has failed to show that Rapid Park has minimum contacts with Colorado as a result of Mr. Wolf's business activities in the state.

### c. Conspiracy

Rapid Park argues that the Court cannot exercise specific personal jurisdiction over it based on Mr. Silverstein's allegation that Rapid Park was engaged in a civil conspiracy with the other defendants because "Colorado does not recognize allegations of engaging in a conspiracy as a basis for asserting personal jurisdiction over a

defendant."  Docket No. 133 at 11.  Under the conspiracy theory of personal jurisdiction, a forum state may exercise personal jurisdiction over a non-resident co-conspirator when "two or more persons conspire to do something that they could reasonably expect to lead to consequences in the forum state and one of the co-conspirators commits overt acts in furtherance of the conspiracy of a type that would submit a nonresident to personal jurisdiction under the long-arm statute of the forum state."  *First Horizon Merchant Services, Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 178 (Colo. App. 2007).  Colorado courts have neither adopted nor rejected this theory of personal jurisdiction.  *See id.*; *Gognat v. Ellsworth*, 224 P.3d 1039, 1053 (Colo. App. 2009) (assuming without holding that the conspiracy theory of personal jurisdiction is viable, but noting that "[n]o Colorado appellate court appears to have directly addressed whether personal jurisdiction over a nonresident can be premised on a conspiracy with a resident of Colorado"); *Giduck v. Niblett*, 408 P.3d 856, 866 (Colo. App. 2014) (assuming without deciding that a civil conspiracy could establish personal jurisdiction in Colorado).

The Court concludes that the Colorado Supreme Court would be unlikely to find that conspiracy theory of personal jurisdiction would apply here where, as discussed previously, the fraudulent transfers that are object of the alleged conspiracy were not directed at Colorado and the injury related to the conspiracy did not occur in Colorado. *See First Horizon*, 166 P.3d at 178 (holding that the conspiracy theory of personal jurisdiction applies where conspirators could "reasonably expect" their actions to "lead to consequences in the forum state"); *see also Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007) ("Where no injury related to the conspiracy occurred in Colorado,

20

and [nonresident defendant's] only Colorado-related action with regard to any purported conspiracy was to receive communications from Colorado, the basis for jurisdiction is slim"); *Bolsa Resources, Inc. v. AGC Resource, Inc.*, No. 11-cv-01291-MSK-KMT, 2011 WL 6370409, at *13 (D. Colo. Dec. 20, 2011) ("Specifically, it is questionable that this theory should apply when the conspiracy is not directed at the forum state, no substantial steps in furtherance of the conspiracy are taken in the forum state, and no injury resulted in the forum state."). Therefore, the Court will decline to exercise personal jurisdiction over Rapid Park based on Mr. Silverstein's allegations that Rapid Park conspired with Mr. Wolf to effectuate fraudulent transfers.

For the reasons stated above, the Court finds that it may not exercise specific personal jurisdiction over Rapid Park because Mr. Silverstein has failed to allege that Rapid Park has minimum contacts with Colorado. The Court will therefore dismiss Mr. Silverstein' claims over Rapid Park for want of jurisdiction.[8]

### B. Venue

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[8] Because the Court is granting Rapid Park's motion on the basis of lack of personal jurisdiction, it will not address Rapid Park's argument that the claims against it should be dismissed under Federal Rule of Civil Procedure 8.

28 U.S.C. § 1391(b).  The complaint does not specifically allege the basis for venue in the District of Colorado.  However, venue would be improper under § 1391(b)(1) because at least two defendants,[9] Meshakai Wolf and Mr. Rey, are not residents of Colorado.  *See* Docket No. 125 at 3, 5, ¶¶ 7, 12.  Therefore, the Court will determine whether Mr. Silverstein has shown that venue is proper under § 1391(b)(2) or (3).  *See Gwynn*, 26 F. Supp. 2d at 1261.

Under § 1391(b)(2), venue is not limited to the district where the majority of the events or omissions occurred.  Rather, § 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Emp. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (applying prior version of § 1391) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).  The Court conducts a "two-part analysis when reviewing challenges to venue."  *Id*.  First, the Court examines the "nature of the plaintiff's claims and the acts or omissions underlying those claims."  *Id*. (citations omitted).  Second, the Court determines "whether substantial 'events material to those claims occurred' in the forum district."  *Id*. (quoting *Gulf Ins.*, 417 F.3d at 357).

The Moving Defendants argue that venue is improper under § 1391(b)(2) because "the events giving rise to Plaintiff's alleged claims did not substantially occur in

---

[9] The parties dispute whether Mr. Wolf is a resident of Colorado.  *See* Docket No. 148 at 7; Docket No. 155 at 4.  However, Mr. Wolf's residence is not probative of whether venue is proper in Colorado because the residence of other defendants outside of Colorado renders venue improper under 28 U.S.C. § 1391(b)(1) and whether venue is proper under 28 U.S.C. § 1391(b)(2) is not determined based on the residence of defendants.  Therefore, the Court will not resolve the dispute as to Mr. Wolf's residency.

Colorado, and a substantial part of property that is the subject of the action is not situated in Colorado." Docket No. 134 at 9. The Moving Defendants claim that the complaint "largely focuses on the allegedly improper transfer of real property in Florida and Oklahoma, no Defendant is a Colorado citizen, and Plaintiff's Colorado-based allegations are either irrelevant or conclusory." *Id.* Mr. Silverstein responds that venue is proper under § 1391(b)(2) because the "transfers giving rise to liability occurred in Colorado." Docket No. 148 at 10-11. Mr. Silverstein also argues that the allegations in the complaint are not conclusory. *Id.* at 9.

Mr. Silverstein's claims are based on the allegedly fraudulent transfer of: (1) the Palm Beach Condominium stock; (2) income from Rapid Park stock; (3) Rapid Park stock; (4) the Routt County Property; (5) the Tulsa Condominiums; and (6) income from an unidentified marijuana business. Docket No. 125 at 7-27, ¶¶ 20-115. The Court will examine the acts underlying the allegedly fraudulent transfers to determine whether substantial events material to the fraudulent transfer claims occurred in Colorado. *See Bartile Roofs*, 618 F.3d at 1166. In addition, the Court will consider the location of the property allegedly transferred. *See* 28 U.S.C. § 1391(b)(2).

### 1. Palm Beach Condominium Stock

The complaint alleges that, on December 14, 2020, Ms. Wolf transferred the rights to the Palm Beach Condominium and the Palm Beach Condominium Stock to Wheatley. Docket No. 125 at 9, ¶ 27. The Palm Beach Condominium consists of real property located in Palm Beach, Florida. *Id.* at 7, ¶ 20. The Moving Defendants argue that this transfer indicates a "substantial connection to Florida, but not Colorado." Docket No. 134 at 7.

Mr. Silverstein appears to raise two arguments in response.  First, he claims that what was transferred was not "title holdings in real property, but rather stock ownership in . . . Ambassador II Corporation . . . which holds title to the Condo and land."  Docket No. 148 at 11.  However, Mr. Silverstein does not explain why the distinction between a transfer of title holding in real property and a transfer of stock in a corporation which holds the title to real property results in a different outcome when determining venue.  Moreover, the complaint alleges that the "rights to the Palm Beach Condo[minimum] are purchased and sold through stock in the Ambassador II Corporation."  Docket No. 125 at 7, ¶ 20.  Therefore, it appears that, even though the transfer was of stock and not the title to the property, ownership of the Florida condominium is the subject of the alleged fraudulent transfer.  *See* 28 U.S.C. § 1391(b)(2).

Second, Mr. Silverstein argues that the transfer of the Palm Beach Condominium Stock took place in Colorado.  However, as discussed above, *supra* at 3, the instrument assigning the rights to the Palm Beach Condominium and Palm Beach Condominium Stock to Wheatley was notarized in Palm Beach County, Florida.  Docket No. 148-13 at 2-4.  The notarization statement indicates that the instrument was signed in the notary's physical presence.  *Id.*  Therefore, the transfer appears to have taken place in Florida, not Colorado.

Thus, Mr. Silverstein has failed to plead or otherwise produce evidence that Colorado is the location where the events giving rise to the claim for fraudulent transfer of the Palm Beach Condominium stock occurred or that Colorado is the location where the real property that is the subject of this claim is situated.  *See* 28 U.S.C. § 1391(b)(2).

### 2.  Income from Rapid Park Stock

The complaint alleges that Mr. Wolf, Rapid Park, and Mr. Rico diverted Mr. Wolf's annual income from his Rapid Park stock, making payments to three fictitious entities, Evergreen Foundation, Patush, and Jewel, LLC, instead of Mr. Wolf.  Docket No. 125 at 14-15, ¶¶ 47-48.  The income was deposited in banks in Steamboat Springs, Colorado, and Mr. Wolf "used the funds post transfer as his own from those banks in Steamboat Springs, Colorado."  *Id.* at 13, ¶ 43.  In addition to the allegations in the complaint, Mr. Silverstein has filed photocopies of two checks from Rapid Park to Patush, which he claims are transfers of Mr. Wolf's income from his Rapid Park stock.  Docket No. 148-26; Docket No. 148 at 9.  These checks were issued by Signature Bank in Long Island City, New York.  Docket No. 148-26.  The Moving Defendants claim that Mr. Silverstein's allegations that the fraudulent transfer of income occurred in Colorado "are entirely conclusory and are thus not to be afforded weight by this Court when determining venue."[10]  Docket No. 134 at 8.  Mr. Silverstein responds that the "allegations are not conclusory.  Even before discovery has begun, some of the transfers are well documented – by Defendants."[11]  Docket No. 148 at 9.

---

[10] In addition, the Moving Defendants argue that Mr. Silverstein's allegations "lack the who, what, where, when, why, and how that is required to plead with particularity" claims sounding in fraud under Federal Rule of Civil Procedure 9(b).  Docket No. 134 at 8.  However, this Court has declined to apply the heightened pleading standard to claims for fraudulent transfer.  *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1271-72 (D. Colo. 2015).

[11] Although Mr. Silverstein has attached documentation indicating that the transfers of income occurred, *see* Docket Nos. 145-5, 148-6, 148-26, he has not attached any documentation indicating that the steps necessary to effectuate the transfers occurred in Colorado.  *Cf.* Docket No. 148-13 (instrument assigning the rights to the Palm Beach Condominium and Palm Beach Condominium Stock notarized Florida).

When considering a defendant's motion to dismiss under Rule 12(b)(3), all "well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." *Hancock,* 701 F.3d at 1260.  Here, the Moving Defendants have submitted no affidavits contradicting Mr. Silverstein's allegations that "the fraudulent transfers of Jeffrey A. Wolf's income from Rapid Park at issue in this case took place in Colorado," that the "banks used to deposit the transferred funds were in Steamboat Springs, Colorado," and that Mr. Wolf "used the funds post transfer as his own from those banks in Steamboat Springs, Colorado." *See* Docket No. 125 at 13, ¶ 43.  These are not conclusory allegations.  Therefore, because there are no affidavits contradicting them, the Court will take these allegations as true.

Thus, because Mr. Silverstein has alleged that the transfers occurred in Colorado, that the bank accounts receiving the deposits of transferred income were located in Colorado, and that Mr. Wolf accessed the bank accounts in Colorado, he has pled that a substantial part of the events giving rise to the claim concerning fraudulent transfers of income from Rapid Park stock occurred in Colorado.

### 3.  Rapid Park Stock

On December 29, 2022, Mr. Wolf, Mr. Rey, and Rapid Park transferred Mr. Wolf's stock in Rapid Park to Madison.  Docket No. 125 at 18, ¶¶ 61, 63.  The complaint alleges that the "actions making up the transfer from Jeffrey A. Wolf to Madison took place in Steamboat Springs, Colorado.  Jeffrey A. Wolf, Rey and Rapid Park arranged for the transfer from Steamboat Springs, Colorado." *Id.*, ¶ 64.

The Moving Defendants have submitted no affidavits contradicting these allegations.  Therefore, taking the allegations concerning the location of the actions making up the transfer of the Rapid Park stock as true, the Court finds that Mr. Silverstein has pled that a substantial part of the events giving rise to this claim occurred in Colorado.[12]  *See Jackson Hewitt Inc. v. New Age Taxes, Inc.*, 2022 WL 17069801, at *3 (D.N.J. Nov. 7, 2022) (finding a substantial part of events relevant to fraudulent transfer claim took place in New Jersey because defendants called and emailed plaintiff in New Jersey, and plaintiff directed conducted an audit, executed documents and performed under the agreements in New Jersey); *Fisher v. Hilton*, 2000 WL 36742240, at *2-4 (C.D. Cal. Apr. 4, 2000) (holding that venue would be proper where defendant's "unlawful act of causing" fraudulent transfers occurred).

### 4.  Routt County Property

On August 26, 2016, Mr. Wolf transferred the title of the Routt County Property to KIVA.  Docket No. 110-5 at 4; Docket No. 148-14 at 4.  On July 25, 2022, KIVA transferred the title of the Routt County Property to FACE.  Docket No. 125 at 21, ¶ 79.  This property is situated in Routt County, Colorado.  *Id.*, ¶ 77; *see also* Docket No. 148-14 at 1.  The Moving Defendants argue that this transfer "should be afforded virtually no weight in determining the propriety of venue" because the transfer from Mr. Wolf to KIVA could not have been for the purpose of evading Mr. Silverstein's collections efforts

---

[12] The Moving Defendants argue for the first time in their reply that, because the law of the state where a corporation issued stock will govern the transfer of that stock, "a transfer of stock occurs where the corporation is located."  Docket No. 155 at 5.  The Moving Defendants cite no legal authority for this proposition.  Moreover, "a party waives issues and arguments raised for the first time in a reply brief."  *Gutierrez v. Cobos,* 841 F.3d 895, 902 (10th Cir. 2016) (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

because it took place years before Mr. Silverstein obtained a judgment against Mr. Wolf and Mr. Silverstein never obtained a judgment against KIVA.  Docket No. 134 at 8. Thus, the Moving Defendants appear to argue that the Court should not consider the location of the Routt County Property for purposes of determining venue because the complaint does not plausibly allege that the property was transferred fraudulently for the purpose of hindering, delaying, or defrauding a creditor.  *See* Colo. Rev. Stat. § 38-8-105(1) (element of fraudulent transfer is that a debtor made the transfer with actual intent to hinder, delay, or defraud a creditor).

However, courts determine whether venue is proper by considering whether "a substantial part of property that is the subject of the action is situated" in the forum, *see* 28 U.S.C. § 1391(b)(2), not whether a plaintiff has plausibly alleged a claim related to property located in the forum.  Since Mr. Silverstein has shown that the Routt County Property is located in Colorado, he has shown that the property that is the subject of this fraudulent transfer claim is situated in Colorado.  *See id.*

### 5.  *Tulsa Condominiums*

The Tulsa Condominiums are real property located in Tulsa, Oklahoma.  Docket No. 125 at 23, ¶ 92.  On June 22, 2020, the Tulsa Condominiums were transferred from JTG Ventures to Evergreen Trust.  *Id.*, ¶ 93.  The complaint does not allege where this transfer took place.  The Moving Defendants argue that, because the real property is located in Oklahoma, it has no tangible connection to Colorado.  Docket No. 134 at 9. Mr. Silverstein does not dispute that the Tulsa Condominiums are located in Oklahoma and he does not claim that the events giving rise to the fraudulent transfer of the condominiums occurred in Colorado.  Thus, Mr. Silverstein has not shown that Colorado

is the location where the events giving rise to the claim for fraudulent transfer of the Tulsa Condominiums occurred or that Colorado is the location where the real property that is the subject of this claim is situated.  *See* 28 U.S.C. § 1391(b)(2).

### 6.  *Income from Marijuana Business*

The complaint alleges that, since the time of the judgments in the Tulsa Case, Mr. Wolf and Ms. Wolf have been receiving proceeds from an unidentified marijuana business in Denver, Colorado through the use of West Alameda.  Docket No. 125 at 25, ¶ 105.  The Moving Defendants appear to argue that the Court should not afford the allegations concerning transfers from the marijuana business weight when determining venue because they do not meet the Rule 9(b) heightened pleading standard for claims sounding in fraud.  Docket No. 134 at 8 n.1.  As discussed above, this Court has declined to apply the heightened pleading standard to claims for fraudulent transfer. *Pernick*, 136 F. Supp. 3d at 1271-72.  However, Mr. Silverstein's allegation is relevant to venue, namely, that Mr. Wolf and Ms. Wolf have been transferring the "proceeds from a marijuana business in Denver, Colorado," Docket No. 125 at 25, ¶ 105, is not well-pled because it is excessively vague.  *See* Fed. R. Civ. P. 8(a).  Moreover, after the Moving Defendants challenged Mr. Silverstein's assertion of venue based on the allegations in this claim, Mr. Silverstein did not produce any evidence establishing that substantial events underlying this claim occurred in Colorado.  Therefore, Mr. Silverstein cannot establish that venue is proper in Colorado based on the allegation that Mr. Wolf, Ms. Wolf, and West Alameda are involved in the fraudulent transfer of income from an unidentified marijuana business.

In sum, Mr. Silverstein has pled that the following events giving rise to his claims occurred in Colorado: (1) income from Mr. Wolf's stock in Rapid Park was deposited in bank accounts located in Steamboat Springs, Colorado; (2) Mr. Wolf accessed and used the funds that were deposited in those bank accounts in Steamboat Springs, Colorado; and (3) Mr. Wolf, Mr. Ray, and Rapid Park arranged for the transfer of Mr. Wolf's Rapid Park stock to Madison in Colorado. *See* Docket No. 125 at 13, 18, ¶¶ 43, 64. The Court finds that these events constitute "a substantial part of the events or omissions giving rise" to Mr. Silverstein's claims. *See* 28 U.S.C. § 1391(b)(2). In addition, Mr. Silverstein has pled that the Routt County Property, one of three pieces of real property that are the subjects of this action, is located in Colorado. Docket No. 125 at 21, ¶ 77. Therefore, the Court finds that Mr. Silverstein has met his burden to establish that venue is proper under 28 U.S.C. § 1391(b)(2). *See Bartile Roofs*, 618 F.3d at 1165-66 (holding that "venue is not limited to the district with the *most* substantial events," but rather, that venue is proper so long as a substantial part of the underlying events took place in the district).

### C. Adequacy of Pleadings Concerning Tulsa Condominiums

The complaint alleges that that, on June 22, 2020, Mr. Wolf, "acting under the alter ego of JTG Ventures," transferred the Tulsa Condominiums to Evergreen Trust for the purpose of protecting the condominiums from Mr. Silverstein's collection efforts. Docket No. 125 at 23, ¶¶ 92-94. Mr. Silverstein alleges that this transfer violated CUFTA. *Id.* at 25, ¶ 104. The complaint "seeks a judgment on all fraudulent transfers making all parties to the transfers liable for the full amount of the judgment, for any damages incurred by Plaintiff in obtaining relief, for statutory damages allowed by law,

30

for all costs and attorney fees in bringing this action, for any other relief allowed under" Colo. Rev. Stat. § 38-8-108.  *Id.* at 28.

Colo. Rev. Stat. § 38-8-108 authorizes the following remedies in an action for fraudulent transfer: (1) avoidance of the transfer; (2) an attachment against the asset transferred or other property of the transferee; (3) a judgment for one and one-half the value of the asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim, whichever is less; (4) equitable remedies including an injunction against further transfer and appointment of a receiver to take charge of the transferred asset; and (5) an order permitting the creditor to levy execution on the transferred asset or its proceeds.  Colo. Rev. Stat. § 13-8-108(1).

The Moving Defendants argue that Mr. Silverstein's claim based on the transfer of the Tulsa Condominiums should be dismissed under Rule 12(b)(6) because the Tulsa Condominiums were placed into receivership on November 6, 2020 and a sale of the condominiums was approved in March 2023.  Docket No. 134 at 14.  The Moving Defendants argue that no defendant has control over the condominiums and no defendant has the ability to benefit from any allegedly fraudulent transfer because the proceeds of the sale "will presumably be applied to satisfy Plaintiff's judgment."  *Id.*  The Moving Defendants do not argue that Mr. Silverstein has failed to plausibly allege any element of his claim for fraudulent transfer of the condominiums.  Instead, they argue that the Court should dismiss Mr. Silverstein's claim concerning the Tulsa Condominiums because Mr. Silverstein "has already obtained his remedy as far as the condominiums are concerned."  Docket No. 155 at 6.

The Moving Defendants' argument fails.  Mr. Silverstein has not obtained the remedy he seeks given that a receiver for the Tulsa Condominiums has been appointed and a sale has been approved.  As stated above, Mr. Silverstein seeks all of the relief afforded by Colo. Rev. Stat. § 38-8-108.  Docket No. 125 at 28.  This relief includes not only an injunction against further disposition of transferred property by the defendant and appointment of a receiver over the property, but also avoidance of the transfer, an attachment against the transferee's property, and a judgment for one and one-half the value of the asset transferred or the amount necessary to satisfy the creditor's claim. Colo. Rev. Stat. § 38-8-108.  Therefore, the appointment of a receiver and the hypothetical future satisfaction of Mr. Silverstein's claim upon the sale of the Tulsa Condominiums do not render Mr. Silverstein's claim moot.  The Court will not dismiss Mr. Silverstein's claim for fraudulent transfer of the Tulsa Condominiums on this basis.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Dismiss Second Amended Complaint [Docket No. 133] filed by Rapid Park is **GRANTED**.  It is further

**ORDERED** that the Moving Defendants' Motion to Dismiss Second Amended Complaint for Improper Venue Under Rule 12(b)(3) or Transfer Venue Under 28 U.S.C. § 1404, and Partially Dismiss Under Rule 12(b)(6) [Docket No. 134] is **DENIED**.  It is further

**ORDERED** that Mr. Silverstein's claims against Rapid Park are **DISMISSED without prejudice** for lack of personal jurisdiction.  It is further

**ORDERED** that Rapid Park is dismissed from this case.

DATED September 13, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge