IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01817-PAB-NRN

STEVEN B. SILVERSTEIN,

    Plaintiff,

v.

JEFFREY A. WOLF,
JEAN WOLF,
KIVA LLC,
WHEATLEY IRREVOCABLE TRUST,
MESHAKAI WOLF,
RAPID PARK HOLDING CORP.,
PATUSH, LLC,
183 WEST ALAMEDA, LLC,
MADISON FAMILY ENTERPRISES, LLC,
JOSHUA REY,
EVERGREEN FAMILY IRREVOCABLE TRUST, and
FOUNDATION FOR ARTS CULTURE & EDUCATION LTD.,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Moving Defendants' *Partially Unopposed* Motion to Stay [Docket No. 172], filed by Jeffrey A. Wolf, Jean Wolf, KIVA LLC, Wheatley Irrevocable Trust, Patush, LLC, 183 W Alameda, LLC, and Madison Family Enterprises, LLC (collectively, the "Moving Defendants").

## I. BACKGROUND

The dispute between the parties concerns judgments that were entered in a Tulsa County, Oklahoma case ("Tulsa Case") in favor of plaintiff Steven Silverstein and

against defendants Jeffrey A. Wolf ("Mr. Wolf") and Jean Wolf ("Ms. Wolf"), as well as two other entities (collectively, the "Tulsa judgment debtors"). Docket No. 125 at 6, ¶¶ 17-18. The court in the Tulsa Case entered final judgment in favor of Mr. Silverstien and against the Tulsa judgment debtors on March 4, 2022. *Id.* at 6-7, ¶ 18. The amount of the judgments, with interest, was approximately $2,000,000 as of August 18, 2023. *Id.* Mr. Silverstein alleges that defendants "engaged in a series of fraudulent transfers and efforts to hide assets" after Mr. Silverstein made claims in the Tulsa Case. *Id.* at 7, ¶ 19. Accordingly, the complaint brings six claims for fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-105, and one claim for civil conspiracy based on the transfers. *Id.* at 7-28, ¶¶ 20-121. One alleged fraudulent transfer is the June 22, 2020 transfer of real property consisting of 87 condominiums in Tulsa County, Oklahoma ("Tulsa Condominiums"). *Id.* at 23, ¶ 92. Mr. Silverstein alleges that Mr. Wolf, acting under the alter ego of another Tulsa judgment debtor, JTG Ventures, LLC, transferred the Tulsa Condominiums to defendant Evergreen Family Irrevocable Trust ("Evergreen") as part of an "intentional design to keep this property from Plaintiff's collection efforts." *Id.* at 6, 23, ¶¶ 17, 93-94.

On November 6, 2020, the court in the Tulsa Case appointed a receiver over the Tulsa Condominiums. Docket No. 172-1 at 2, ¶¶ 1-2. On March 2, 2023, the court authorized the sale of the Tulsa Condominiums for approximately $3,250,000. Docket No. 172-2 at 2, 4 ¶¶ 5, 9. The Moving Defendants state that the receiver estimated the proceeds that would be available from the sale would be $1,200,000. Docket No. 172 at 4; *see also* Docket No. 172-4. The Moving Defendants state that this amount "will likely be contested." Docket No. 172 at 4. The Moving Defendants ask the Court to

2

stay all proceedings in this case in response to the sale of the Tulsa Condominiums. *Id.* at 2-4. The Moving Defendants ask that the stay be effective "until the proceeds from the sale have been applied against the judgment" because "the proceeds could effectively render this action moot." *Id.* at 4.

## II.   LEGAL STANDARD

It is well established that a court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). However, the Tenth Circuit has cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (alteration and citation omitted). Stays of all proceedings in a case are thus "generally disfavored in this District" and are considered to be "the exception rather than the rule." *Davidson v. Bank of Am. N.A.*, No. 14-cv-01578-CMA-KMT, 2015 WL 5444308, at *1 (D. Colo. Sept. 16, 2015). A stay may, however, be appropriate in certain circumstances. In determining whether to grant or deny a stay, courts in this district consider the following factors (the "*String Cheese* factors") in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

III.   ANALYSIS

   A. <u>Prejudice to Plaintiff</u>

The Moving Defendants state that Mr. Silverstein is prosecuting claims against Mr. Wolf in four lawsuits for the purpose of collecting on the "underlying judgment."[1] Docket No. 172 at 4.  They argue that issuing a stay in this case therefore "would not result in any material prejudice, as Plaintiff is free to continue with his other lawsuits." *Id*.  The Moving Defendants also argue that there would be no material prejudice to Mr. Silverstein because "his judgment is expected to be satisfied shortly."  *Id*.  The Moving Defendants cite no authority in support of the proposition that either of these factors would reduce the potential prejudice to Mr. Silverstein of delaying resolution in this case.  Moreover, as will be discussed below, the Moving Defendants have failed to demonstrate that Mr. Silverstein's other cases are duplicative of this case or that his judgment will be satisfied shortly.

On the other hand, Mr. Silverstein "undoubtedly has an interest in proceeding expeditiously in this matter."  *LS3 Inc. v. Cherokee Fed. Sols. L.L.C.*, No. 20-cv-03555-PAB-NYW, 2021 WL 4947284, at *3 (D. Colo. Aug. 26, 2021) (alteration and citation omitted); *see also Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) (holding that "staying the case while defendant's motion to dismiss is pending could substantially delay the ultimate resolution of the matter, with injurious consequences").  The Court finds that this factor weighs against staying proceedings.

---

[1] The Court interprets the "underlying judgment" to refer to the judgment rendered in Mr. Silverstein's favor in the Tulsa Case.

4

### B. <u>Burden on Defendants</u>

The Moving Defendants state that, in addition to the Tulsa Case and the case before the Court, Mr. Silverstein has filed other cases against them, including a collection action in Colorado and a lawsuit in Delaware attempting to seize stock once owned by Mr. Wolf and now owned by defendant Madison Family Enterprises, LLC. Docket No. 172 at 3.  They argue that denying a stay in this case would burden defendants because they "should not have to defend four separate actions that all essentially seek the same relief."[2]  *Id.* at 4.

Courts have found that, under the *String Cheese* factors, a defendant may be burdened by defending duplicative lawsuits.  See *Michels v. U.S. Dep't of Justice*, No. 21-cv-01737-WJM-NRN, 2021 WL 8153753, at *3 (D. Colo. Nov. 30, 2021).  "In general, 'a suit is duplicative if the claims, parties, and available relief do not *significantly* differ between the two actions.'"  *Rosiere v. United States*, No. 16-cv-00143-GPG, 2016 WL 7431208, at *2 (D. Colo. Mar. 16, 2016) (quoting *Park v. TD Ameritrade Trust Co.*, 461 F. App'x 753, 755 (10th Cir. 2012) (unpublished)).  The Moving Defendants claim that the "issues in each [of Mr. Silverstein's] case[s] are almost exclusively overlapping, as Plaintiff is seeking to inquire into the assets owned or controlled by Jeffrey Wolf, Jean Wolf, and the other entities."  Docket No. 172 at 5.  However, with the exception of stating that Mr. Silverstein has attempted to seize Rapid Park Holding Corporation stock in the lawsuit he filed in Delaware, *id.* at 3, the Moving Defendants do not identify the

---

[2] The Moving Defendants also argue that denying a stay would burden the defendants because Mr. Silverstein "has already demonstrated an intent to go far beyond collecting the judgment."  Docket No. 172 at 4.  However, the Moving Defendants do not explain how Mr. Silverstein has demonstrated this intent or explain why Mr. Silverstein is not entitled to relief beyond collecting the judgment.

5

claims, parties, or available relief in Mr. Silverstein's other cases.  Therefore, the Moving Defendants have not demonstrated that they would be prejudiced by being forced to defend against duplicative lawsuits.  The Court finds that this factor weighs against staying proceedings.

### C. Convenience to the Court

The Moving Defendants claim that "a stay would allow the proceeds from the sale of the Oklahoma Property to be applied to the judgment, which would also eliminate or reduce the need for this proceeding in the first instance."  *Id.* at 5.  Mr. Silverstein responds that this case "does not go away, or become moot, if Plaintiff's judgment is satisfied."  Docket No. 174 at 1.  Mr. Silverstein argues that the statutory remedies available for claims for fraudulent transfer "go well beyond payment of the judgment," and that the remedies for civil conspiracy claims include punitive damages. *Id.* at 4; *see* Colo. Rev. Stat. § 38-8-108(1)(c) (authorizing courts to enter a judgment for one and one-half the value of the asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim); *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 149 (Colo. 2003) (upholding award of exemplary damages on civil conspiracy claim), *overruled on other grounds by L.H.M. Corp., TCD v. Martinez*, 499 P.3d 1050 (Colo. 2021).  The Court agrees with Mr. Silverstein that, even if the sale of the Tulsa Condominiums satisfied the judgment in the Tulsa Case,[3] it

---

[3] Moreover, it is not clear that the proceeds from the sale of the Tulsa Condominiums would satisfy Mr. Silverstein's judgment against the judgment debtors. The Moving Defendants claim that the condominiums were "in Evergreen's name" before they were sold by the receiver, and that Evergreen is not one of the Tulsa judgment debtors.  Docket No. 172 at 2, 5 n.1.  The Moving Defendants' assertion that "the Receiver was appointed specifically so that Plaintiff could collect on the Judgment" is contradicted by the order appointing the receiver, which states that the "appointment

would not "eliminate or reduce the need for this proceeding." *See* Docket No. 172 at 5. Therefore, the Court finds that this factor weighs against staying proceedings.

### D. Interests of Nonparties

The parties do not discuss how a stay would affect the interests of nonparties. The Court finds that this factor is neutral.

### E. Public Interest

The Moving Defendants argue that a stay would promote judicial efficiency because it is "unnecessary for Plaintiff to pursue Mr. Wolf across multiple courts and states, so staying proceedings in one of these cases would reduce the number of judges that have to review effectively identical information." *Id*. As stated above, the Moving Defendants have failed to provide information sufficient to demonstrate that Mr. Silverstein is pursuing duplicative litigation in multiple courts and states since they have failed to identify the parties, claims, and relief sought in the other cases. Therefore,

---

of an independent receiver is not an adjudication of the parties' ultimate rights as to the property, but merely a vehicle to preserve the value of the assets." Docket No. 172-1 at 2 n.1. In addition, Mr. Wolf stated during discovery that he is not a beneficiary or trustee of Evergreen. Docket No. 174-3 at 3. In light of this evidence, the Moving Defendants have not explained why proceeds from the sale of the Tulsa Condominiums would be applied to the judgment against the Tulsa judgment debtors. Moreover, the Moving Defendants state that the receiver estimated that the proceeds from the sale would be approximately $1.2 million, but the amount of the judgments issued in the Tulsa Case, not including interest, totaled over $1.7 million. Docket No. 172 at 2, 4; Docket No. 174 at 2; *see also* Docket No. 125 at 7, ¶ 18 (alleging that, by August 18, 2023, the total amount of the judgments, with interest, was approximately $2 million). Although the Moving Defendants state that the amount of proceeds from the sale of the Tulsa Condominiums "will likely be contested," this statement is mere speculation. Docket No. 172 at 4. Accordingly, the Moving Defendants fail to support their assertion that Mr. Silverstein's "judgment is expected to be satisfied shortly," *id*., with anything more than conjecture.

7

they have failed to demonstrate that judicial economy would be served by staying the allegedly duplicative litigation.

The Moving Defendants also argue that a stay would avoid potentially inconsistent results because, in "the absence of a stay, this Court could in theory allow a seizure of Mr. Wolf's property to satisfy the judgment, but the proceeds from the sale of the [Tulsa Condominiums] could substantially satisfy the judgment the very next day."[4]  *Id.* at 6.  However, as discussed above, the Moving Defendants' assertion that proceeds from the sale of the Tulsa Condominiums will be applied to Mr. Silverstein's claim against the judgment debtors is contradicted by orders in the Tulsa Case and discovery responses in this case.  *See* Docket No. 172-1 at 2 n.1; Docket No. 174-3 at 3.  Because "the public interest . . . 'favors the prompt and efficient handling of all litigation,'" the Court finds that the public interest weighs against staying proceedings in this case.  *Hernandez v. United Builders Serv., Inc.*, No. 18-cv-02019-RM-SKC, 2018 WL 11615588, at *3 (D. Colo. Dec. 21, 2018) (quoting *Gold, Inc. v. H.I.S. Juveniles, Inc.,* No. 14-cv-02298-RM-KMT, 2015 WL 1650900, at *2 (D. Colo. Apr. 8, 2015)).

The Court finds that four *String Cheese* factors weigh against staying proceedings and one factor is neutral and therefore these factors collectively weigh

---

[4] The Moving Defendants argue that "Plaintiff has also attempted to seize approximately $35 million of stock in Rapid Park both here and in the Delaware litigation, and this Court and the Delaware court could reach inconsistent opinions on whether Plaintiff is entitled to recover the stock."  Docket No. 172 at 6.  However, the Moving Defendants fail to explain how this result would be prevented if the Court were to grant the motion and stay proceedings until proceeds from the sale of the Tulsa Condominiums are distributed, since the Delaware court may still not have reached a conclusion as to Mr. Silverstein's entitlement to the stock by that time.

8

against staying this case. As a result, the Court will deny the Moving Defendants' motion to stay.

IV. **CONCLUSION**

Therefore, it is

**ORDERED** that Moving Defendants' Partially Unopposed Motion to Stay [Docket No. 172] is **DENIED**.

DATED September 16, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge