IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01817-PAB-NRN

STEVEN B. SILVERSTEIN,

    Plaintiff,

v.

JEFFREY A. WOLF,
JEAN WOLF,
KIVA LLC,
WHEATLEY IRREVOCABLE TRUST,
MESHAKAI WOLF,
RAPID PARK HOLDING CORP,
PATUSH, LLC,
183 WEST ALAMEDA, LLC,
MADISON FAMILY ENTERPRISES, LLC,
JOSHUA REY,
EVERGREEN FAMILY IRREVOCABLE TRUST, AND
FOUNDATION FOR ARTS CULTURE & EDUCATION LTD.,

    Defendants.

---

**ORDER**

---

This matter comes before the Court on plaintiff's Motion for Summary Judgment against Jeffrey Wolf and Madison Family Enterprises, LLC [Docket No. 220]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

Plaintiff Steven Silverstein registered a judgment against Jeffrey Wolf, Jean Wolf, JTG Ventures, LLC, and ORD Ltd. in the District of Colorado on January 21, 2022. *Silverstein v. Wolf*, No. 22-rj-00001-PAB-NRN, Docket No. 1. Mr. Silverstein filed the present action on July 22, 2022. Docket No. 1. Mr. Silverstein has named a number of

defendants in this action, *see* Docket No. 125 at 1, but moves for summary judgment only as to Jeffrey Wolf and Madison Family Enterprises, LLC ("Madison"). Although the order refers to arguments made by Mr. Wolf, those arguments were also made on behalf of Madison.

On June 21, 2023, Mr. Silverstein filed a motion seeking a preliminary injunction, levy of execution, or receivership prohibiting the transfer of Mr. Wolf's stock in Rapid Park Holding Corp. ("Rapid Park"). Docket No. 72. On July 28, 2023, the Court denied that motion, finding that the then-operative complaint failed to state any causes of action upon which the Court could grant injunctive relief. Docket No. 113 at 6-8.

Mr. Silverstein filed an amended complaint on August 18, 2023, alleging claims under the Colorado Uniform Fraudulent Transfer Act ("CUFTA"). Docket No. 125 at 12, 17, 20, 23, 25-27. On September 18, 2024, Mr. Silverstein filed the present motion, again seeking an injunction, a levy of execution, or a receivership over Rapid Park stock controlled by Mr. Wolf. Docket No. 181. On August 19, 2025, the Court held an evidentiary hearing on the motion. Docket No. 247. On August 21, 2025, the Court granted the motion for preliminary injunction, enjoining Mr. Wolf and Madison from transferring, selling, encumbering, or otherwise disposing of the shares of Rapid Park stock that were owned by Mr. Wolf and then transferred to Madison. Docket No. 248 at 23-24. The Court also found that it was necessary to appoint a receiver to take possession of the Rapid Park stock.

On March 2, 2026, the Court appointed Randel Lewis as receiver. Docket No. 260 at 2.

## II. UNDISPUTED FACTS[1]

Two judgments were entered against Mr. Wolf and in favor of plaintiff on October 11, 2021 and March 3, 2022, respectively (collectively, the "judgment"). Docket No. 220 at 2, ¶ 1.[2] The cumulative base amount of the judgment as of March 3, 2022 was $1,703,725.91. *Id.*, ¶ 2. This amount was ordered to earn interest at the rate established by Okla. Stat. tit. 12, § 727.1 from March 4, 2022. *Id.* Mr. Wolf has not paid any portion of the Judgment. *Id.*, ¶ 3.[3] A receivership action resulted in a payment on behalf of JTG Ventures, LLC (Wolf's co-defendant) in the amount of $600,920.50 on June 18, 2024. *Id.* The amount of $1,564,396 remains unpaid. *Id.*

Mr. Wolf started a company called Rapid Park in New York. *Id.*, ¶ 4. He grew the company and eventually allowed members of his family into the ownership. *Id.* As of the filing of this case, Mr. Wolf was the owner of 25% of the stock in Rapid Park. *Id.*; *see also* Docket No. 224 at 4, ¶ 20. On December 29, 2022, Mr. Wolf transferred (the "transfer") all of his stock in Rapid Park to Madison. Docket No. 220 at 2, ¶ 5; Docket No. 224 at 5, ¶ 23. Mr. Wolf was the owner and manager of Madison. Docket No. 220 at 2, ¶ 5. The stock was worth approximately $35,239,331. *Id.* Mr. Wolf transferred his stock in Rapid Park to Madison for zero consideration. *Id.*, ¶ 6.[4] On December 31,

---

[1] The following facts are undisputed unless otherwise noted.
[2] Defendants respond that they "admit that two judgments entered against Jeffrey Wolf on October 11, 2021 and March 2, 2022," but that they "deny these are final judgments." Docket No. 224 at 2, ¶ 1. The Court finds this to be nonresponsive and deems this fact admitted.
[3] Defendants dispute this fact, stating that, "[o]n June 14, 2024, a payment of $600,920.50 was applied to the judgments in the Oklahoma litigation. . . . Wolf has also attempted to file a bond by having liens filed by Plaintiff released in order to do so." Docket No. 224 at 2, ¶ 3. The Court finds this to be nonresponsive and deems this fact admitted.
[4] Defendants dispute this fact, stating that "Wolf received tax and estate planning benefits and benefits to charitable causes." Docket No. 224 at 2, ¶ 6. For reasons the

3

2022, Madison donated 990 membership units (99 percent of the total membership units) to The Verity Charitable Fund ("Verity"), a 501(c)(3) charitable organization, as an unrestricted donation. Docket No. 224 at 5, ¶ 24.

Immediately prior to the transfer, the March 4, 2022 judgment was entered establishing the amount Mr. Wolf owed, an April 7, 2022 Writ of Execution was issued seeking to attach Mr. Wolf's stock in Rapid Park, and the immediate case was filed against Mr. Wolf on July 22, 2022. Docket No. 220 at 3, ¶ 7.[5]

Upon completing the transfer, Mr. Wolf had transferred substantially all of his assets out of his name. *Id.*, ¶ 8.[6] According to Mr. Wolf's sworn interrogatory response, after transferring his stock worth $35,239,331, Mr. Wolf was left owning nothing more than "cuff links, a tie clip, gold collar stays, some cashmere sweaters, [and] a Swatch watch." *Id.* According to Mr. Wolf, he was already impoverished before the transfer, as

---

Court will discuss in the analysis section of this order, benefits such as those identified by Mr. Wolf are not regarded as consideration for purposes of a CUFTA claim, so Mr. Wolf's response fails to create a genuine dispute of material fact as to whether he received any consideration in exchange for transferring the stock. The Court deems this fact admitted.

[5] Defendants dispute this fact, stating that "Plaintiff did not serve the writ of execution, though it was issued by the Court on April 7, 2022, in the related case of 22-rj-00001-PAB-NRN. . . . Plaintiff did not take action on the Rapid Park stock until he filed a foreign judgment in Delaware Superior Court on February 6, 2023, in *Silverstein v. Wolf et al.*, N23J-00229, seeking to attach the stock." Docket No. 224 at 2, ¶ 7. The Court finds this to be nonresponsive and deems this fact admitted.

[6] Defendants deny this fact, stating that "Plaintiff relies upon interrogatory responses signed on December 9, 2023, which is nearly one year after the subject transfer to Madison Family Enterprises and to The Verity Charitable Fund. Exhibit 7 to the Motion requests information that Wolf has 'owned personally.'" Docket No. 224 at 2-3, ¶ 8. In support of his denial, Mr. Wolf points to a statement in his May 27, 2025 declaration. *See id.* (citing Docket No. 225 at 5, ¶ 29. For the reasons the Court will discuss in the analysis section of this order, it finds that Mr. Wolf's effort to deny plaintiff's asserted fact constitutes a "sham fact issue." The Court therefore deems this fact admitted.

4

an email from Mr. Wolf to Judge Drummond in the underlying Tulsa County District Court case in which Mr. Wolf claims he has no money to pay attorney fees. *Id.*, ¶ 11.[7]

Mr. Wolf disclosed the transfer in a public court filing in Delaware on May 15, 2023. Docket No. 224 at 7, ¶ 36.

## III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving

---

[7] Defendants dispute this fact based on the fact that the exhibit cited by plaintiff comes from an email sent more than two years before the transfer at issue in this case. Docket No. 224 at 3, ¶ 11. Defendants do not challenge the authenticity of the evidence cited by plaintiff, but instead appear to challenge the relevance of the evidence. The Court finds this to be a legal question and addresses the import of this evidence in the analysis section of this order. The Court deems this fact admitted.

party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## IV. ANALYSIS

Mr. Silverstein's complaint alleges that Mr. Wolf and the other defendants engaged in various fraudulent transfers in violation of CUFTA. Docket No. 125 at 12, 17, 20, 23, 25-27. The motion for summary judgment is focused on the claim that Mr. Wolf and Madison violated CUFTA when Mr. Wolf transferred Rapid Park stock to Madison in December 2022. *See, e.g.*, Docket No. 220 at 1, 6-10.

"CUFTA's purpose is to protect a debtor's estate from certain depletions that prejudice the debtor's unsecured creditors." *CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 529 (Colo. App. 2010) (citing *Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1167 (Colo. App. 2006)). "Under CUFTA, a 'creditor' is a 'person who has a claim,' and 'claim' means 'a right to payment, whether or not the right is reduced to judgment, liquidated, . . . contingent, . . . disputed, undisputed, legal, equitable, secured, or unsecured.'" *ND Mgmt. Servs., LLC v. Two G-Ventures, LLC*, 2020 WL 14045346, at *10 (Colo. App. Apr. 2, 2020) (quoting Colo. Rev. Stat. § 38-8-102(3), (5)). Under CUFTA, a "debtor" is a "person who is liable on a claim." *Id.* (quoting § 38-8-102(7)).

6

Judgments were entered against Mr. Wolf and in favor of Mr. Silverstein on October 11, 2021 and March 3, 2022. Docket No. 220 at 2, ¶ 1. Thus, under CUFTA, Mr. Silverstein was, at the time of the alleged transfer of Rapid Park stock in December 2022 from Mr. Wolf to Madison, *see id.*2, ¶ 5; Docket No. 224 at 5, ¶ 23, a creditor with a claim against Mr. Wolf.

Mr. Silverstein specifically brings his claim pursuant to Sections 38-8-105(1)(a) and 38-8-105(1)(b) of CUFTA. Docket No. 125 at 12, 17, 20, 23, 25-27.[8] Those provisions state that:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (I)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (II) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Colo. Rev. Stat. § 38-8-105(1)(a)–(b). Section 38-8-105(1)(a) requires that the defendant act "with actual intent to hinder, delay or defraud." In analyzing such a claim, courts rely on "badges of fraud" since "the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof." *See Schempp v. Lucre Mgmt. Grp., LLC*, 18 P.3d

---

[8] Mr. Silverstein does not explain why he should prevail at summary judgment under Section 38-8-105(1)(b). *See* Docket No. 220 at 4. The Court therefore does not analyze Mr. Silverstein's claims under that provision.

7

762, 764 (Colo. App. 2000), *as modified on denial of reh'g* (July 20, 2000) ("*Schempp I*"). These badges of fraud are:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Colo. Rev. Stat. § 38-8-105(2)(a)–(k). "While a single badge of fraud may only create suspicion of fraud, several badges of fraud considered together may infer intent to defraud." *Schempp I*, 18 P.3d 762 at 764. The Court will discuss each of the badges that it finds relevant to this case.

### A. Badges of Fraud

**1. Colo. Rev. Stat. § 38-8-105(2)(a): Transfer of the asset to an insider**

Under CUFTA, the term "insider" includes relatives of the debtor or of general partners of the debtor, a partnership in which the debtor is a general partner, or a corporation in which the debtor is a director, officer, or person in control. Colo. Rev. Stat. § 38-8-102(8)(a). At the time of the transfer of Rapid Park stock from Mr. Wolf to Madison, Mr. Wolf was the owner and manager of Madison. Docket No. 220 at 2, ¶ 5. The Court finds that a debtor's transfer of stock to a limited liability company that he controls fits the definition of a transfer to an "insider." The Court therefore finds that Mr. Wolf transferred the stock to an insider, namely, Madison.

### 2. Colo. Rev. Stat. § 38-8-105(2)(b): Debtor retains possession or control of the asset post-transfer

Under this factor, the court considers whether the debtor retained some degree of possession or control over the transferred property. *Schempp v. Lucre Management Group, LLC*, 75 P.3d 1157, 1162 (Colo. App. 2003) ("*Schempp II*"). At the time of the December 2022 transfer, Mr. Wolf was the owner and manager of Madison. Thus, Mr. Wolf retained control over the Rapid Park stock after the transfer to Madison.

### 3. Colo. Rev. Stat. § 38-8-105(2)(c): Concealment of the transfer

Under this factor, the court considers whether the parties to the transfer disclosed the transfer or if they sought to conceal it. Colo. Rev. Stat. § 38-8-105(2)(c). Courts consider whether the parties agreed to keep the transaction from the public, whether they complied with any public recording requirements, and whether they revealed the transaction to trustees and creditors of the debtor. *Schempp II*, 75 P.3d at 1162. There is no evidence that the transfer had to be publicly reported. It is undisputed that Mr. Wolf disclosed the transfer in a public court filing in May 2023. Docket No. 224 at 7, ¶ 36. Mr. Wolf argues that this disclosure shows that this badge of

9

fraud cannot be met. *Id.* at 12. Mr. Wolf does not cite, and the Court is not aware of, any authority supporting the proposition that was an allegedly fraudulent transfer cannot be considered concealed merely because the transferring party discloses the transfer months after the transfer occurred. However, because Mr. Silverstein has not identified any undisputed facts showing that Mr. Wolf concealed the transfer, the Court finds that this badge of fraud has not been established.

### 4. Colo Rev. Stat. § 38-8-105(2)(d): Lawsuit preceding the transfer

For this factor, the court considers whether a lawsuit, or the threat of a lawsuit, preceded the transfer at issue. Colo. Rev. Stat. § 38-8-105(2)(d). At the time of the transfer in December 2022, Mr. Wolf had judgments entered against him on October 11, 2021 and March 3, 2022. Docket No. 220 at 2, ¶ 1. The Court also takes judicial notice of the fact that Mr. Wolf appeared in *Silverstein v. Wolf*, No. 22-rj-00001-PAB-NRN, the action in which Mr. Silverstein registered his judgment against Mr. Wolf. *See, e.g.*, *id.*, Docket No. 6 (Mr. Wolf's February 15, 2022 *pro se* response to application for writ of garnishment); Docket No. 31 (Mr. Wolf's Juny 10, 2022 *pro se* "objection" to discovery requests by Mr. Silverstein). The Court finds that a lawsuit preceded the transfer, and that Mr. Wolf was aware of the judgment and associated collection efforts at the time of the December 2022 transfer.

### 5. Colo. Rev. Stat. § 38-8-105(2)(e): Transfer is substantially all of the debtor's assets

For this factor, the court considers whether Mr. Wolf transferred substantially all of his assets in the transaction. Colo. Rev. Stat. § 38-8-105(2)(e). In December 2022, Mr. Wolf transferred approximately $35 million in Rapid Park stock that he owned to Madison. Docket No. 220 at 2, ¶ 5. In July 2020, Mr. Wolf represented to the court in

10

the case that led to the judgment against Mr. Wolf that he had no money to pay for an attorney. *Id.* at 3, ¶ 11. In a December 2023 response to an interrogatory in this case, Mr. Wolf stated that all he owned was "cuff links, a tie clip, gold collar stays, some cashmere sweaters, a Swatch watch." *Id.*, ¶ 8. In response to Mr. Silverstein's motion for summary judgment, Mr. Wolf attempts to create a genuine dispute of material fact as to whether he transferred substantially all of his assets by providing a declaration in which he states that, "[a]fter making [the transfer to Madison], I still had assets through my ownership interests in other entities, including a home in Steamboat, and this was not substantially all of my assets. I did not become insolvent after the transfer-donation." Docket No. 225 at 5, ¶ 29 (declaration of Jeffrey Wolf). Mr. Silverstein's reply notes the inconsistency between Mr. Wolf's interrogatory statement and his declaration. Docket No. 227 at 1. The Court finds the declaration falls within the "sham affidavit" rule and cannot serve to create a genuine dispute of material fact.

In response to the interrogatory question "Identify each and every asset (including but not limited to real property, deposit accounts, brokerage accounts, accounts receivable, stock, membership in a limited liability company, art, personal property, vehicles, and jewelry) You have owned personally, in whole or in part, during the last five (5) years," Mr. Wolf responded that he "personally owns cuff links, a tie clip, gold collar stays, some cashmere sweaters, a Swatch watch." Docket No. 220-7 at 1-2. Mr. Wolf signed the interrogatory on December 9, 2023, underneath the statement "I, Jeffrey A. Wolf, declare under penalty of perjury that the foregoing second amended and supplemental answers to interrogatories are true and correct to the best of my knowledge, information, and belief." *Id.* at 6.

11

"There is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). "In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Id.* (collecting cases). In evaluating the potential existence of a sham fact issue, courts consider "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*

The factors articulated in *Franks* contemplate an affidavit that makes contrary assertions to prior deposition testimony. *See id.* However, the Court finds these factors also apply in a case like the present one, where a declaration makes an inconsistent statement with a previously submitted interrogatory. *See Donohoe v. Consol. Operating & Prod. Corp.*, 736 F. Supp. 845, 861 (N.D. Ill. 1990) (citing *Franks* and finding that "there is surely no reason to treat answers to special interrogatories as less deserving of credence than depositions"), *aff'd in part, vacated in part*, 982 F.2d 1130, 1136 n.4 (7th Cir. 1992) ("The [district] court's refusal to consider the affidavit was appropriate."); *see also Bowles v. Grant Trucking, LLC*, 842 F. App'x 236, 241 (10th Cir. 2021) (unpublished) (analyzing a sham fact issue in the context of a supposed conflict between an affidavit and an interrogatory); *Prince v. Claussen*, 173 F.3d 864, 1999 WL 152282 (10th Cir. 1999) (affirming district court's finding of a sham fact issue in the context of two inconsistent interrogatories). The Court finds that Mr. Wolf's May 27,

12

2025 declaration attempts to create a sham issue of fact.  Mr. Wolf's December 9, 2023 interrogatory was made under oath and did not identify any ownership interests, in whole or in part, in entities such a home in Steamboat Springs, Colorado, even though the scope of the interrogatory included "stock" and "membership in a limited liability company".  See Docket No. 220-7 at 1-2.  There is no reason to believe the declaration is based on new information, such as Mr. Wolf learning years later that he actually held an ownership interest in the Steamboat house at the time of the December 2022 transfer to Madison.  There is also no basis to find that the declaration is attempting to clarify some confusion in the interrogatory.  The Court therefore will not consider the assertion in Mr. Wolf's declaration that the transfer of Rapid Park stock did not constitute substantially all of his assets.

Mr. Wolf also argues that his July 2020 statement about lacking the funds to pay an attorney and his December 2023 statement about only owning a few items of clothing and jewelry should be discounted because neither statement was made in close temporal proximity to the December 2022 transfer to Madison.  Docket No. 224 at 12-13.  Mr. Wolf cites no authority in support of this position; more importantly, he cites no evidence that would account for the supposedly significant changes in his financial status between 2020 and 2022.[9]  The Court finds that no reasonable juror could conclude that Mr. Wolf's transfer of stock to Madison did not constitute a transfer of substantially all of his assets.

---

[9] The Court notes that, at an August 19, 2025 evidentiary hearing on Mr. Silverstein's motion for a preliminary injunction, Mr. Wolf testified that his interrogatory statement about owning only a few items of clothing in jewelry was true at the time he made the statement and was still true as of the time of the evidentiary hearing.  See Docket No. 247 at 2.

13

### 6. *Colo. Rev. Stat. § 38-8-105(2)(h): Value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred*

For this factor, the court considers whether "[t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." Colo. Rev. Stat. § 38-8-105(2)(h). Under CUFTA, the term "[r]easonably equivalent value . . . is not wholly synonymous with market value." *Schempp I*, 18 P.3d at 765. The term includes both direct and indirect benefits to the transferor-debtor, even if the benefit does not increase the transferor's net worth. *Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1167 (Colo. App. 2006). Intangible, non-economic benefits do not, however, constitute reasonably equivalent value. *Fifth Third Bank v. Morales*, No. 16-cv-01302-CMA-STV, 2017 WL 6492108, at *4 (D. Colo. Dec. 19, 2017). "Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition [of reasonably equivalent value]." *Id.* (quoting § 38–8–104, cmt. 2). In considering the concept of value, a court must keep in mind the purpose of CUFTA, which is to protect the debtor estate from being depleted to the prejudice of the debtor's unsecured creditors. *Id.*

Mr. Wolf transferred the Rapid Park stock to Madison for "zero consideration." Docket No. 220 at 2, ¶ 6. Mr. Wolf argues that the Court should not consider the transfer from Mr. Wolf to Madison alone, but should instead view it as part of a broader transaction that ultimately resulted in a charitable donation from Madison to Verity. Docket No. 224 at 13-15. Mr. Wolf believes the Court should consider the benefits he received from making that donation to Verity. *Id*. As Mr. Silverstein correctly points out in his reply, Docket No. 227 at 5, the transfer at issue is the transfer from Mr. Wolf to

14

Madison, not the transfer from Madison to Verity. Mr. Wolf received no consideration for that transaction. Docket No. 220 at 2, ¶ 6.

Even if the Court considered the Wolf-Madison transfer as part of a larger transfer meant to donate the Rapid Park stock to Verity, Mr. Wolf still fails to create a genuine dispute as to whether he received reasonably equivalent value for the transfer. As the Court explained earlier, benefits that are of no value to a creditor do not count as "consideration." *Fifth Third Bank*, 2017 WL 6492108, at *4. Mr. Wolf does not explain the nature of the estate planning benefits he obtained and does not indicate the extent to which any tax obligations he had were reduced. Moreover, Mr. Wolf offers no evidence or argument that the benefits that he obtained would have any value to a creditor such as Mr. Silverstein. As such, the benefits Mr. Wolf claims to have received do not constitute "consideration" for purposes of CUFTA. The Court therefore finds that Mr. Wolf did not receive reasonably equivalent value for his transfer of Rapid Park stock to Madison.

### B. Application of Badges of Fraud at Summary Judgment

The Court has found that there is no genuine dispute of material fact as to five badges of fraud.[10] The presence of five badges supports a finding that Mr. Wolf violated CUFTA by making a transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor." *See* Colo. Rev. Stat. § 38-8-105(1)(a); *see also Schempp I*, 18

---

[10] Both parties offer brief arguments as to other badges of fraud. *See* Docket No. 220 at 8-10, 13; Docket No. 224 at 15-16. It is not clear whether some of these factors are relevant to the present case, and given that a successful fraudulent transfer does not require the presence of all of the badges of fraud, or even a majority of them, the Court does not reach these arguments. *See Brandon v. Anesthesia & Pain Mgmt. Assocs.*, Ltd., 419 F.3d 594, 600 (7th Cir. 2005) (holding that the badges of fraud are "not additive" and that "one would hardly expect" to find every factor met in the same case).

15

P.3d 762 at 764 ("several badges of fraud considered together may infer intent to defraud"). The question, then, is whether, when the undisputed facts establish the presence of five badges of fraud, the Court may enter summary judgment on the behalf of a plaintiff.

Mr. Wolf argues that the nature of a CUFTA claim, which requires a determination of fraudulent intent, does not lend itself to summary judgment. Docket No. 224 at 8-9. However, a number of appellate courts have affirmed the granting of summary judgment in favor of a plaintiff on a fraudulent transfer claim. In *Lewis v. Taylor*, 375 P.3d 1205, 1212 (Colo. 2016), the Colorado Supreme Court reversed the court of appeals and reinstated a trial court's grant of summary judgment to a plaintiff on a CUFTA claim. In *Hafen v. Howell*, 121 F.4th 1191, 1197 (10th Cir. 2024), the Tenth Circuit affirmed a district court's grant of summary judgment to a plaintiff on a claim brought under Utah's counterpart to CUFTA.

Both *Lewis* and *Hafen* involved Ponzi schemes and thus involved a "Ponzi presumption" by which all payments made by the operator of a Ponzi scheme are presumed to be fraudulent transfers. *Lewis*, 375 P.3d at 1208; *Hafen*, 121 F.4th at 1200. The present case, however, does not involve a presumption of a fraudulent transfer.

But other courts of appeals, applying fraudulent transfer laws similar to CUFTA, as well as a District of Colorado case applying CUFTA, have approved or granted summary judgment where five or more badges of fraud were established and the defendants offered no real defense for the transfer. *See F.D.I.C. v. Anchor Props.*, 13 F.3d 27, 33 (1st Cir. 1994) (applying Massachusetts law and holding that, "[g]iven the presence of multiple badges of fraud, and [defendant's] inability to produce even a

16

single properly documented fact casting any doubt on [plaintiff's] position, we too can see only one conclusion, namely, that the transfer was fraudulent."); *Klein v. Weidner*, 729 F.3d 280, 284-86 (3d Cir. 2013) (applying Pennsylvania law and affirming the grant of summary judgment when six badges of fraud were undisputed); *BMG Music v. Martinez*, 74 F.3d 87, 90 (5th Cir. 1996) (applying Texas law and affirming the grant of summary judgment when six badges present); *Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 671 (9th Cir. 2018) (unpublished) (applying California law and affirming the grant of summary judgment when six badges present); *Fifth Third Bank v. Morales*, No. 16-cv-01302-CMA-STV, 2017 WL 6492108, at *5 (D. Colo. Dec. 19, 2017) (applying Colorado law and granting summary judgment when five badges present).

The Court finds the reasoning of these cases persuasive and finds that, based on the presence of five badges of fraud and the failure of Mr. Wolf to identify any genuine dispute of material fact as to the fraudulent nature of the transfer, summary judgment is warranted. The Court will therefore grant Mr. Silverstein's motion insofar as it requests that summary judgment be entered against Mr. Wolf on plaintiff's CUFTA claim.[11]

When a fraudulent transfer under CUFTA occurs, the first transferee is also liable to the creditor. *Nd Mgmt. Servs., LLC v. Two G-Ventures, LLC*, 2020 WL 14045346, at *11 (Colo. App. Apr. 2, 2020) (citing Colo. Rev. Stat. § 38-8-109(2)(a)). The only

---

[11] Mr. Wolf argues that Mr. Silverstein's CUFTA claim may be "premature" due to the fact that Mr. Wolf still has an appeal pending regarding the judgment in the Oklahoma case that gave rise to the case before this Court. Docket No. 224 at 9. Mr. Wolf made this argument in his brief filed on May 27, 2025. *See generally id.* On August 15, 2025, the Court of Civil Appeals of the State of Oklahoma rejected Mr. Wolf's contentions of error and affirmed the judgment. *See generally* Docket No. 242-1. The Court understands that Mr. Wolf has filed a petition for a writ of certiorari with the Oklahoma Supreme Court and is awaiting a ruling. The Court finds that Mr. Silverstein's pursuit of this case is not premature.

exception to this rule is if the first transferee can prove that "it took in good faith and for a reasonably equivalent value." *Id.* (citing *Schempp II*, 75 P.3d at 1165). Mr. Wolf transferred the Rapid Park stock to Madison, *see* Docket No. 220 at 2, ¶ 5; Docket No. 224 at 5, ¶ 23, which makes Madison the first transferee. Madison offers no argument why it accepted the transferred stock for good faith and for reasonably equivalent value. Therefore, the Court finds that Madison is also liable for a violation of CUFTA and will grant Mr. Silverstein's motion insofar as it requests that summary judgment on plaintiff's CUFTA claim also be entered against Madison.

### C. Damages

Colo. Rev. Stat. § 38-8-108 provides that a creditor in a CUFTA action may obtain:

> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Colorado rules of civil procedure;
>
> (c) With respect to a transfer made or obligation incurred that is voidable under section 38-8-105(1)(a), a judgment for one and one-half the value of the asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim, whichever is less, together with the creditor's actual costs;

*Id.* § 38-8-108(1)(a)-(c). Mr. Silverstein asks the Court to void the transfer of stock from Mr. Wolf to Madison and to award Mr. Silverstein $2,346,594, which is 1.5 times the outstanding judgment of $1,564,396. Docket No. 220 at 11-12. The Court has already enjoined the transfer or disposition of the Rapid Park stock held by Madison and has appointed a receiver to hold that stock and receive any proceeds or distributions associated with the stock. Docket No. 248; Docket No. 260 at 2-5. Given that, the Court believes that voiding the transfer is unnecessary because the receiver will be able

18

to provide for the satisfaction of the judgment through the assets already controlled by the receiver. The Court will enter judgment against Mr. Wolf and in favor of Mr. Silverstein in the amount of $2,346,594.

## V. CONCLUSION

It is therefore

**ORDERED** that plaintiff's Motion for Summary Judgment against Jeffrey Wolf and Madison Family Enterprises, LLC [Docket No. 220] is **GRANTED.** It is further

**ORDERED** that judgment shall enter in favor of plaintiff Steven B. Silverstein and against Jeffrey A. Wolf and Madison Family Enterprises, LLC in the amount of $2,346,594. It is further

**ORDERED** that the injunction issued by the Court on August 21, 2025 shall remain in effect pending the satisfaction of the judgment. It is further

**ORDERED** that the receiver appointed by the Court on March 2, 2026 shall remain in that role until the satisfaction of the judgment.

DATED March 2, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge